# 11-5019

*To Be Argued By*
*Jesse M. Siegel*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
_____

**UNITED STATES OF AMERICA,**
**Appellee,**

**-against-**

**JOSE M. NUNEZ, PEDRO T. ROLFFOT,**
**MANNY A. JIMENEZ,**
**Defendants,**

**RAFAEL CASIMIRO,**
**Defendant - Appellant.**
_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
_____

**BRIEF AND APPENDIX FOR APPELLANT**
**RAFAEL CASIMIRO**

Jesse M. Siegel
233 Broadway, Suite 2701
New York, New York 10279
(212) 207-9009
*Attorney for Appellant*
*Rafael Casimiro*

# TABLE OF CONTENTS

STATEMENT OF SUBJECT MATTER
    AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    The Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Mr. Casimiro's Safety Valve Proffer . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    THE SENTENCE IMPOSED BY THE DISTRICT COURT WAS
        UNREASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    Procedural Unreasonableness of the Sentence . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985) . . . . . . . . . . . . . . . . . . . 11

*Gall v. United States*, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kimbrough v. United States*, 552 U.S. 85 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rita v. United States*, 551 U.S. 338 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Booker*, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Castellanos*, 355 F.3d 56 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . 14

*United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Fernandez*, 443 F.3d 19 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . 9

*United States v. Rattoballi*, 452 F.3d 127 (2d Cir. 2006) . . . . . . . . . . . . . . . . . 9, 10

*United States v. Zagari*, 111 F.3d 307 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . 11

**Statutes**

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 14

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Guidelines**

USSG § 3E1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

### Docket No. 11-5019

_____

## UNITED STATES OF AMERICA,
**Appellee,**

### -against-

## JOSE M. NUNEZ, PEDRO T. ROLFFOT,
## MANNY A. JIMENEZ,
**Defendants,**

## RAFAEL CASIMIRO,
**Defendant - Appellant.**

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

## BRIEF FOR APPELLANT
## RAFAEL CASIMIRO

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Rafael Casimiro ("Mr. Casimiro") was charged with committing offenses against the United States for which the district court had jurisdiction pursuant to 18 U.S.C. § 3231. He appeals from a final judgment of conviction and sentence that disposed of all claims before the district court; this Court therefore has

jurisdiction pursuant to 28 U.S.C. § 1291.  By filing a timely notice of appeal on November 28, 2011, he complied with Rule 4(b) of the Federal Rules of Appellate Procedure.

## QUESTION PRESENTED

Whether the sentence imposed by the district court was unreasonable.

## STATEMENT OF THE CASE

Mr. Casimiro appeals from a judgment of the United States District Court for the Southern District of New York (Buchwald, J.), entered on November 16, 2011, convicting him, after a jury trial, of conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B), and sentencing him to a term of six years of imprisonment, to be followed by a term of five years of supervised release. In addition, the court

ordered a special assessment of $100.[1] Mr. Casimiro is currently incarcerated pursuant to this sentence.

## STATEMENT OF FACTS

### *Introduction*

Mr. Casimiro was arrested and charged in this case for his complicity in a drug "sting"transaction, involving two grams of cocaine, that occurred in Yonkers, New York, on April 28, 2009. The case arose from an undercover operation in Florida. Mr. Casimiro's role in the conspiracy was not as a buyer or seller of the drugs, but as someone who supplied a portion of the money needed to facilitate the purchase of the drugs, with the understanding he would be repaid with a profit.

Subsequent to his conviction, and in advance of sentencing, Mr. Casimiro made a "safety valve" proffer, in which he admitted the offense conduct as well as four additional transactions in which he had been involved as an "investor." He denied that he had been involved in any other transactions.

---

[1]A copy of the judgment appealed from is contained in the Appendix to this brief beginning on page A 61. Future references to matter contained in that appendix will be designated in brackets by the letter "A" followed by the relevant page number(s). Additional page references to the trial transcript will be preceded by the letter "T" in brackets, and those to the sentencing minutes will be preceded by the letter "S."

3

The issues raised in this appeal do not extend to the conviction, but only to the reasonableness of the sentence imposed on Mr. Casimiro. These include the conduct of a *Fatico* hearing during the sentencing. The facts detailed below are limited to those having a bearing on the issues raised herein.

### The Trial

The government's proof at trial included, aside from law enforcement employees and an interpreter who authenticated the translation of audio tape evidence, the testimony of two cooperating witnesses, Jose Manuel Nunez ("Nunez") and Giovani Gonzalez ("Gonzalez").

Nunez testified extensively about his activities in Florida, including various meetings with individuals who were subsequently disclosed to be working for or with law enforcement on an undercover basis, as well as his subsequent trip to New York to effect the drug deal on April 28, 2009, that resulted in his arrest. [T 57 *et seq.*] Although he could not identify Mr. Casimiro by name, Nunez identified Mr. Casimiro in court as an individual who had brought cash to him to pay for the cocaine he was purchasing on April 28. [A 14-17] His testimony included no reference to any other drug transaction involving Mr. Casimiro.

Gonzalez, an admitted liar, was permitted to testify not only to the April 28, 2009, transaction, but also to a number of other drug transactions in which he

4

claimed to have been involved with Mr. Casimiro. Over the course of eleven or more meetings with the government after his arrest, Gonzalez admitted he did not disclose his own prior drug transactions or any transactions involving Mr. Casimiro until it became clear that Mr. Casimiro intended to go to trial, and an opportunity developed for him to benefit from providing testimony against him. This included Gonzalez's failure to disclose, for well over a year and until a few month's before Mr. Casimiro's trial, his own criminal history, which included dealing cocaine, marijuana and steroids, selling a gun and being involved in a prostitution ring. Additionally, Gonzalez admitted destroying evidence, *viz.,* photographs of drug money. [A 18-21, 22-33, 35]

Notwithstanding, at trial, Gonzalez testified that he had engaged in eleven other transactions with Mr. Casimiro, corresponding to over seven kilograms of cocaine. [T 382 et seq.] At the same time, Gonzalez acknowledged that there was no one who could corroborate his allegations. [A 34]

### Mr. Casimiro's Safety Valve Proffer

After trial, and in anticipation of relief under the "safety valve" provision of 18 U.S.C. § 3553(f), Mr. Casimiro met with the government. In his proffer, Mr. Casimiro not only admitted having supplied approximately $34,000 of the approximately $54,000 involved in the April 28 drug deal, but also admitted that

5

he had supplied a total of approximately $31,000 in cash to Gonzalez for four other drug deals, an amount that corresponds to roughly one kilogram of cocaine. He denied any other involvement with Gonzalez in connection with the latter's purchase of drugs. [S 25-27]

### *Sentencing*

Mr. Casimiro appeared for sentencing on November 14, 2011. After reviewing the various submissions and issues before it, the court determined that a *Fatico* hearing would be required to resolve the issue of drug quantity to be included in Mr. Casimiro's relevant conduct for guideline purposes and, relatedly, his qualification for safety valve status. [A 36-37] The court also had before it Mr. Casimiro's application for a guideline reduction based on acceptance of responsibility under USSG § 3E1.1, but deemed that to be a legal issue not requiring an evidentiary hearing. [A 36]

Before commencing the evidentiary phase of the hearing the court addressed a warning to Mr. Casimiro:

> Mr. Casimiro, there are only two people, you and Mr. Gonzalez, that know the truth about your dealings with each other. If this hearing proceeds, my job will be to make a decision about which of you is in fact telling the truth. I have not made that decision yet. But I want you to understand something: That if I find at the end of the hearing that you have lied to me, your sentence will be

6

> greater than what it would be if we never had this
> hearing.

[A 42] The court then heard testimony from Mr. Casimiro, consistent with that he gave in his proffer [S 11 *et seq.*], followed by that of Gonzalez, who again insisted that Mr. Casimiro had been involved in additional deals. [S 93 *et seq.*]

At the conclusion of the evidentiary hearing, and after hearing from counsel and Mr. Casimiro personally [A 44-56], and after the court interjected that "the jury believed his [Gonzalez's] testimony [A 53] and also announcing that it would not grant a reduction in the guideline for acceptance of responsibility without regard to the outcome of the *Fatico* hearing [A 54], the court proceeded to resolve the remaining issues and impose its sentence.

First, regarding the safety valve, the court found that Mr. Casimiro was not entitled to the benefit of that provision based on its finding that Mr. Casimiro did not testify truthfully about his conduct. This was based on a finding that Mr. Casimiro "had every reason to lie and did so." [A 56] The court also found that Gonzalez "didn't have a reason to lie at the trial, and he didn't have a reason to lie today." [A 57] The court went on to note that:

> [I]t is clear to me that the jury believed [Gonzalez's]
> testimony in fundamental respects, and that explains in
> part the swift verdict that they reached, which I noted
> earlier there was no more than an hour from the time that

7

they were sent to retire and the time they physically were
back in the courtroom and had reached a verdict even
earlier than the one hour.

[*Id.*]

Based on Gonzalez's testimony being deemed "credible," the court affirmed

the guideline level calculated in the presentence report [*id.*], and thereafter

imposed a sentence of six years of imprisonment, noting that one year of that

sentence was imposed based upon its finding that Mr. Casimiro had not told the

truth in the *Fatico* hearing. [A 60]

## ARGUMENT

## THE SENTENCE IMPOSED BY THE DISTRICT COURT WAS UNREASONABLE

### A.    Introduction

As discussed *supra,* the only issue in this case relates to the reasonableness

of the sentence imposed on Mr. Casimiro. Although there are several sub-issues,

all of them derive from the district court's factual finding, subsequent to the

*Fatico* hearing, crediting the uncorroborated testimony of an admitted liar,

Gonzalez, and not believing the testimony of Mr. Casimiro. Because we submit

that the district court's finding in that regard was in error, the resulting findings –

that Mr. Casimiro was not entitled to the benefit of the safety valve relief set forth

in 18 U.S.C. § 3553(f), that he was responsible for a drug quantity of between 5

and 15 kilograms of cocaine and that he did not demonstrate that he was entitled to

a guideline reduction for acceptance of responsibility pursuant to USSG § 3E1.1 –

were also in error. As to the last two findings based on the court's factual

predicate, we further submit that the court's rulings were legally erroneous. We

will address these errors below.

**B.    Legal Standards**

Under the standard established in *United States v. Booker*, 543 U.S.

220, 260-61 (2005), this Court reviews sentencing determinations for

reasonableness. *United States v. Crosby*, 397 F.3d 103, 114-115 (2d Cir. 2005);

*United States v. Rattoballi*, 452 F.3d 127, 131 (2d Cir. 2006). Such review is "akin

to review for abuse of discretion." *United States v. Fernandez*, 443 F.3d 19, 27 (2d

Cir. 2006).

In *Rattoballi,* the Court summarized the applicable issues in more detail:

> Reasonableness review has two components: (1)
> procedural reasonableness, whereby we consider such
> factors as whether the district court properly (a)
> identified the Guidelines range supported by the facts
> found by the court, (b) treated the Guidelines as
> advisory, and (c) considered the Guidelines together with
> the other factors outlined in  18 U.S.C. § 3553(a); and

9

(2) substantive reasonableness, whereby we consider whether the length of the sentence is reasonable in light of the factors outlined in 18 U.S.C. § 3553(a). *Crosby*, 397 F.3d at 113-15. After *Booker*, we still review a district court's interpretation of the Sentencing Guidelines *de novo* and evaluate its findings of fact under the clearly erroneous standard. *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir.2005).

*Id.* at 131-132 (footnote omitted).

Subsequently, in *United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008), this Court examined its evaluation of reasonableness in light of the Supreme Court's pronouncements in *Gall v. United States*, 552 U.S. 38 (2007) and *Kimbrough v. United States*, 552 U.S. 85 (2007), as well as *Rita v. United States*, 551 U.S. 338 (2007). That review, while deferential, continues to focus on the procedural and substantive reasonableness of the sentence. *Cavera,* 550 F.3d at 189.

With regard to procedural reasonableness, *Cavera* explains that:

A district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified, *see Crosby*, 397 F.3d at 112), makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory. *Gall*, 128 S.Ct. at 597. It also errs procedurally if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact. *Id.*

*Id.* at 190. In addition, procedural error occurs when a court "fails adequately to explain its chosen sentence," *id.,* and "[t]he statutory scheme has long required

10

sentencing judges, 'at the time of sentencing,' to state their reasons for imposing

the particular sentence 'in open court.' 18 U.S.C. § 3553(c)." *Id.* at 192-193.

Inherently, 18 U.S.C. § 3742 also defines the outer limits of reasonableness. In

particular, as pertinent here, § 3742(a)(1) provides for review of sentences

imposed "in violation of law."

 With regard to factual findings supporting a court's sentencing

determination, the standard for proving such facts is a preponderance of the

evidence, and this Court reviews a district court's factual conclusions for clear

error. *United States v. Zagari*, 111 F.3d 307, 323 (2d Cir. 1997). Clear error exists

when the Court is "'left with the definite and firm conviction that a mistake has

been committed.'" *Cavera*, 550 F.3d at 204 (quoting *Anderson v. City of Bessemer

City*, 470 U.S. 564, 574 (1985)).

 In making its findings regarding the sentence to be imposed, the court is

guided by 18 U.S.C. § 3553(a), which provides that, as pertinent:

> (2) the need for the sentence imposed—

>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## C.    Procedural Unreasonableness of the Sentence

The testimony at the *Fatico* hearing presented two diametrically opposite versions of the facts regarding the extent of Mr. Casimiro's involvement in additional drug deals with Gonzalez. In determining whether a preponderance of the evidence supported  Gonzalez's allegations regarding these additional transactions, the court was called upon to assess whether Gonzalez, who had already proven himself to be someone who would not tell the truth, could be believed in this case. The court's analysis, leading it to conclude that he, and not Mr. Casimiro, should be believed, rested on two conclusions, both of which constitute clear error.

First, the court found that Gonzalez "didn't have a reason to lie." But the record is replete with evidence that he did have a reason – and a very good reason for someone who had already demonstrated a willingness to lie when it served his own interests. Indeed, per his cooperation agreement with the government, his "cooperation" was inherently inconsistent with his own interests. Had he testified

12

consistently with Mr. Casimiro, that cooperation, and the government's submission of the §5K1.1 letter that hangs in the balance, would have been jeopardized. For the court to conclude that he had no reason to lie flies in the face of the evidence, and cannot be reconciled with it.

Second, the court was heavily influenced by the jury verdict in the case, which it took as proof that the jury believed Gonzalez's testimony. This reliance – repeated by the court multiple times – is both erroneous and invalid. In the first place, the court, as the finder of sentencing facts, must properly make its own determination rather than relying on its suppositions about what the jury did or did not find. Secondly, since the jury was instructed only to consider these allegations as evidence of Mr. Casimiro's knowledge and intent, and not as evidence of his guilt of the offense charged and voted on by the jury, any such supposition is unwarranted and inherently flawed. Finally, since there was sufficient testimony from another witness (Nunez) to support Mr. Casimiro's conviction – even if the jury wholly discredited Gonzalez's testimony – the court's speculation as to what the jury did and did not believe (and in particular its speculation based on the length of time the jury took to render its verdict) is improper and clearly erroneous.

13

As a result of its clearly erroneous factual finding, the conclusions that the court reach based on that finding, including its determination of drug quantity, of Mr. Casimiro's eligibility for the safety valve and whether he should receive a guideline reduction for acceptance of responsibility, fail for lack of factual support.

Moreover, in light of Mr. Casimiro's clear and unequivocal admission of the offense conduct during his proffer, the district court's apparent rejection of a reduction for acceptance of responsibility *even without regard to its factual finding* is clearly erroneous. As Application Note 2 to USSG §3E1.1 states, "[c]onviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction." Further, this is not a case, such as *United States v. Castellanos*, 355 F.3d 56, 58, 60-61 (2d Cir. 2003), where a reduction for acceptance of responsibility is inappropriate because the defendant testified untruthfully at trial, and then sought safety valve proffer relief by recanting that testimony. Here, Mr. Casimiro merely put the government to its burden of proof, but did not testify at all.

The court has clearly committed numerous errors in Mr. Casimiro's sentence. For all of these reasons, we urge that the sentence be vacated.

## CONCLUSION

For all of the reasons set forth above, the Court should vacate the sentence imposed by the district court and remand this case for resentencing.

Respectfully submitted,

Jesse M. Siegel
233 Broadway, Suite 2701
New York, New York 10279
(212) 207-9009
*Attorney for Appellant*
*Rafael Casimiro*

May 15, 2013

# CERTIFICATE OF COMPLIANCE

I certify that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Wordperfect 12 in Times New Roman, 14-point font.  Consistent with Rule 32(a)(7)(A), the brief does not exceed 30 pages.

/s/_____
Jesse M. Siegel
233 Broadway, Suite 2701
New York, New York 10279
(212) 207-9009
*Attorney for Appellant*
*Rafael Casimiro*

Dated:        New York, New York
                    May 15, 2013

# APPENDIX

# APPENDIX INDEX

| **Item** | **Page** |
|---|---|
| Docket Entries | 1 |
| Indictment | 10 |
| Trial Transcript (Excerpt - pages 77-80) | 14 |
| Trial Transcript (Excerpt - pages 371-374) | 18 |
| Trial Transcript (Excerpt - pages 438-449) | 22 |
| Trial Transcript (Excerpt - page 473) | 34 |
| Trial Transcript (Excerpt - page 482) | 35 |
| Sentencing Transcript (Excerpt - pages 3-10) | 36 |
| Sentencing Transcript (Excerpt - pages 155-174) | 44 |
| Judgment | 61 |
| Notice of Appeal | 67 |

*A copy of the presentence report is submitted separately under seal.*

CLOSED, APPEAL, PRIOR

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:09–cr–00497–NRB–4

Case title: USA v. Nunez et al
Magistrate judge case number: 1:09−mj−02459−UA

Date Filed: 05/14/2009
Date Terminated: 11/16/2011

Assigned to: Judge Naomi Reice
Buchwald

**Defendant (4)**

| | | |
|---|---|---|
| **Rafael Casimiro**<br>*TERMINATED: 11/16/2011* | represented by | **David E. Levine**<br>David E. Levine, Esq.<br>186 Joralemon Street<br>Brooklyn, NY 11201<br>(718) 875–1212<br>Fax: (718) 875–1717<br>Email: davidelevine@aol.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Frederick H. Cohen**<br>61 Broadway<br>Suite 1601<br>New York, NY 10006<br>(212) 768–1110<br>*TERMINATED: 11/16/2009*<br>*LEAD ATTORNEY*<br>*Designation: CJA Appointment* |
| | | **Frederick Harvey Cohn**<br>Law Office of Frederick H. Cohn<br>111 Broadway, Suite 1805<br>New York, NY 10006<br>(212) 768–1110<br>Fax: (212) 267–3024<br>Email: fcohn@frederickhcohn.com<br>*LEAD ATTORNEY*<br>*Designation: CJA Appointment* |
| | | **Mitchell C. Elman**<br>Law Offices of Mitchell C. Elman, P.C.<br>6901 Jericho Tpke., Suite 255<br>Syosset, NY 11791<br>(516) 586–6666<br>Email: mitchell.elman@verizon.net<br>*LEAD ATTORNEY*<br>*Designation: Retained* |

| **Pending Counts** | **Disposition** |
|---|---|
| CONSPIRACY TO DISTRIBUTE<br>CONTROLLED SUBSTANCE<br>(1) | Imprisonment: 6 YEARS; Supervised Release: 5<br>YEARS |

**Highest Offense Level (Opening)**

A 1

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level
(Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 21 U.S.C. 846 (NARCOTICS
CONSPIRACY) | |

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Edward Young Kyu Kim**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212)–637–2401
Fax: (212)–637–2527
Email: edward.kim@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas James Lewin**
U.S. Attorney's Office, SDNY (St Andw's)
One St. Andrew's Plaza
New York, NY 10007
(212) 637–2337
Fax: (212) 637–2937
Email: Nicholas.Lewin@usdoj.gov
*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 11/06/2009 | 1 | COMPLAINT as to Alfredo Diaz (1), Giovani Gonzalez (2), Rafael Casimiro (3). In Violation of 21 U.S.C. 846 (Narcotics Conspiracy) (Signed by Magistrate Judge Theodore H. Katz) (dif) [1:09–mj–02459–UA] (Entered: 11/13/2009) |
| 11/11/2009 | | Arrest Warrant Returned Executed on 11/11/2009 as to Rafael Casimiro. (dif) [1:09–mj–02459–UA] (Entered: 11/13/2009) |
| 11/11/2009 | | Arrest of Rafael Casimiro. (dif) [1:09–mj–02459–UA] (Entered: 11/13/2009) |
| 11/12/2009 | 8 | CJA 23 Financial Affidavit by Rafael Casimiro. (Signed by Judge Magistrate Judge Debra C. Freeman) (dif) [1:09–mj–02459–UA] (Entered: 11/13/2009) |
| 11/12/2009 | | Minute Entry for proceedings held before Magistrate Judge Debra C. Freeman:Initial Appearance as to Rafael Casimiro held on 11/12/2009., with CJA Attorney Frederick Cohen and AUSA Edward Kim for the government. $300,000 PRB; 4 FRP'S; Secured by Property: Located at 62 Wenlock St, Staten Island; Travel Limited to SDNY/EDNY; Surrender Travel Documents (&No New Applications); Strict Pretrial Supervision; Drug Testing/Treatment; Deft to be Released upon Own Signature and Signatures of 3 Co–Signers; Remaining Conditions to be Met by 4th Co–Signer by 11/13/09; Surrender Passport by 11/13/09; Posting Property by 11/20/09 ( Preliminary Examination set for 12/14/2009 at 10:00 AM before Judge Unassigned.) (dif) Modified on 11/13/2009 (dif). [1:09–mj–02459–UA] (Entered: 11/13/2009) |

| 11/12/2009 | 9 | PRB APPEARANCE Bond Entered as to Rafael Casimiro in amount of $ 300,000 PRB, 4 FRP'S; Secured by Property: Located at 62 Wenlock St, Staten Island; Travel Limited to SDNY/EDNY; Surrender Travel Documents (&No New Applications); Strict Pretrial Supervision; Drug Testing/Treatment; Deft to be Released upon Own Signature and Signatures of 3 Co–Signers; Remaining Conditions to be Met by 4th Co–Signer by 11/13/09; Surrender Passport by 11/13/09; Posting of Property by 11/20/09 (dif) Modified on 11/13/2009 (dif). [1:09–mj–02459–UA] (Entered: 11/13/2009) |
|---|---|---|
| 11/12/2009 | 10 | ADVICE OF PENALTIES AND SANCTIONS as to Rafael Casimiro. (dif) [1:09–mj–02459–UA] (Entered: 11/13/2009) |
| 11/12/2009 | 16 | CJA 20 as to Rafael Casimiro: Appointment of Attorney Frederick Harvey Cohn for Rafael Casimiro. (Signed by Magistrate Judge Debra C. Freeman on 11/24/09) CJA Office has mailed the original and sent a copy to the file.(sac) [1:09–mj–02459–UA] (Entered: 12/04/2009) |
| 11/16/2009 | | Attorney update in case as to Rafael Casimiro. Attorney Mitchell C. Elman for Rafael Casimiro added. Attorney Frederick H. Cohen terminated. (dif) [1:09–mj–02459–UA] (Entered: 11/17/2009) |
| 11/16/2009 | 11 | NOTICE OF ATTORNEY APPEARANCE: Retained Attorney Mitchell C. Elman appearing for Rafael Casimiro. (dif) [1:09–mj–02459–UA] (Entered: 11/17/2009) |
| 12/11/2009 | 18 | AFFIRMATION of Edward Y. Kim in Support by USA requesting a 30–day continuance from 12/11/09 to 1/11/10 as to Giovani Gonzalez, Rafael Casimiro (aba) [1:09–mj–02459–UA] (Entered: 12/14/2009) |
| 12/11/2009 | 19 | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Giovani Gonzalez, Rafael Casimiro. Time excluded from 12/11/09 until 1/11/10. (Signed by Magistrate Judge Andrew J. Peck on 12/11/09)(aba) [1:09–mj–02459–UA] (Entered: 12/14/2009) |
| 01/11/2010 | | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Giovani Gonzalez, Rafael Casimiro. Time excluded from 1/11/2010 until 2/10/2010. Follows oral order of 1/11/2010.. (Signed by Magistrate Judge Frank Maas on 1/11/2010)(dif) [1:09–mj–02459–UA] (Entered: 01/12/2010) |
| 01/11/2010 | 21 | AFFIRMATION of AUSA Edward Kim in Support by USA as to Giovani Gonzalez, Rafael Casimiro, the government is requesting a 30–Day continuance until February 10, 2010 (dif) [1:09–mj–02459–UA] (Entered: 01/12/2010) |
| 02/09/2010 | 23 | AFFIRMATION of Edward Y. Kim in Support by USA requesting a 30–day continuance from 2/9/10 to 3/12/10 as to Rafael Casimiro (aba) [1:09–mj–02459–UA] (Entered: 02/16/2010) |
| 02/09/2010 | | ORDER TO CONTINUE IN THE INTEREST OF JUSTICE as to Rafael Casimiro re: 19 Order to Continue – Interest of Justice. Time excluded from 2/9/10 until 3/12/10. Follows oral order of 2/9/10. (Signed by Magistrate Judge Henry B. Pitman on 2/9/10)(aba)[1:09–mj–02459–UA] (Entered: 02/16/2010) |
| 03/09/2010 | 24 | INDICTMENT FILED (on S1) as to Rafael Casimiro (4) count(s) 1. (ja) (Entered: 03/16/2010) |
| 03/18/2010 | 25 | ENDORSED LETTER as to Rafael Casimiro addressed to Judge Buchwald from Mitchell C. Elman dated 3/18/2010 re: To travel from New York to Honolulu, Hawaii on March 19, 2010 to March 23, 2010...ENDORSEMENT...Application Granted. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 3/18/2010)(jw) (Entered: 03/19/2010) |
| 03/18/2010 | | Minute Entry on 'Disposition Sheet' for proceedings held before Magistrate Judge Henry B. Pitman: Arraignment as to Rafael Casimiro (4) Count 1 held on 3/18/2010. AUSA Ed Kim; Defense Counsel Mitchell Elman. Defendant arraigned and pleads Not Guilty. Time between today and 3–31–10 excluded without objection to permit discovery and plea discussions. (bw) (Entered: 03/24/2010) |
| 03/18/2010 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Plea entered by Rafael Casimiro (4) Count 1 –– Not Guilty. (bw) (Entered: 03/24/2010) |

A 3

| 03/18/2010 | | ORAL ORDER as to Rafael Casimiro. Time excluded from 3/18/2010 until 3/31/2010. (Judge Henry B. Pitman, U.S.M.J.) (bw) (Entered: 03/24/2010) |
|---|---|---|
| 03/18/2010 | 26 | NOTICE OF ATTORNEY APPEARANCE: Mitchell C. Elman appearing for Rafael Casimiro. (bw) (Entered: 03/24/2010) |
| 04/02/2010 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Status Conference as to Rafael Casimiro held on 4/2/2010, as to Rafael Casimiro( Status Conference set for 4/30/2010 at 10:45 AM before Judge Naomi Reice Buchwald.) AUSA Buckley, defense counsel Ellman, defendant, and court reporter appeared for initial conference before Judge Buchwald on March 31, 2010 at 2:30 pm. The defense received Rule 16 discovery today. The next conference was scheduled for April 30, 2010 at 10:45 am to allow review of discovery. STT excluded until that date. (jw) (Entered: 04/06/2010) |
| 04/07/2010 | 28 | SEALED DOCUMENT placed in vault. (nm) (Entered: 04/07/2010) |
| 04/26/2010 | 29 | TRANSCRIPT of Proceedings as to Rafael Casimiro held on March 31, 2010 2:45 p.m. before Judge Naomi Reice Buchwald. (ajc) (Entered: 04/26/2010) |
| 04/28/2010 | 31 | ENDORSED LETTER as to (S1–09–Cr–497–04) Rafael Casimiro addressed to Judge Buchwald from Attorney Mitchell C. Elman dated April 27, 2010 re: This will confirm your conversation with chambers that Mr. Casimiro underwent surgery to repair a ruptured patella tendon. We are respectfully requesting that this matter be adjourned from April 30, 2010 at 10:45 a.m. to May 26, 2010 at 3:15 p.m. This adjournment is on consent with AUSA Edward Kim and the time is excluding for speedy trial purposes. ENDORSEMENT: So Ordered. (Signed by Judge Naomi Reice Buchwald on 4/27/2010)(bw) (Entered: 04/28/2010) |
| 05/26/2010 | 36 | ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT as to Rafael Casimiro. It is hereby ORDERED that time is excluded from 5/26/2010 and the conference scheduled in this matter, 6/29/2010 at 2:30 p.m. – it will allow time for the parties to discuss a potential dispo of the case. SO ORDERED. ( Pretrial Conference set for 6/29/2010 at 02:30 PM before Judge Naomi Reice Buchwald.) (Signed by Judge Naomi Reice Buchwald on 5/25/2010)(ja) (Entered: 05/26/2010) |
| 06/28/2010 | 38 | ORDER as to Rafael Casimiro: It is hereby ORDERED that the time between 6/29/2010 and the conference scheduled in this matter, 7/20/2010 at 03:15 PM before Judge Naomi Reice Buchwald, is excluded for purposed of the Speedy Trial Act 18 USC 3161 (h)(8)(A), in the interests of justice. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 6/25/2010)(ab) (Entered: 06/28/2010) |
| 07/16/2010 | 41 | ORDER as to Rafael Casimiro ( Status Conference set for 8/12/2010 at 02:15 PM before Judge Naomi Reice Buchwald.) ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT as to Rafael Casimiro. Time excluded from 7/20/2010 until 8/12/2010. It is hereby ORDERED that the time between July 20, 2010 and the conference scheduled in this matter, August 12, 2010 at 2:15 p.m., is excluded for purposes of the Speedy Trial Act, 18 U.S.C. § 3161(h) (8) (A), in the interests of justice. The ends of justice served by such. continuance outweigh the interest of the public and the defendant in a speedy trial because it will allow time for the parties to discuss a potential disposition of the case. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 7/16/2010)(jw) (Entered: 07/16/2010) |
| 08/10/2010 | 43 | ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT as to Rafael Casimiro. Time excluded from 8/12/2010 until 8/26/2010. (Signed by Judge Naomi Reice Buchwald on 8/10/2010)(dnd) (Entered: 08/10/2010) |
| 08/26/2010 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Pretrial Conference as to Rafael Casimiro held on 8/26/2010. Dft Casimiro present w/atty Elman. AUSA Kim and Crt rptr present. Most discovery has been produced. Gov't intends to make supplemental discovery, in about a week. Conference scheduled for 10/13/2010 at 11 a.m. STT excluded until 10/13/2010. ( Pretrial Conference set for 10/13/2010 at 11:00 AM before Judge Naomi Reice Buchwald.) (ja) (Entered: 08/27/2010) |
| 10/13/2010 | 46 | ORDER EXCLUDING TIME UNDER THE SPEEDY TRIAL ACT: As to Rafael Casimiro. It is hereby ORDERED that the time between October 13, 2010, and the pretrial conference scheduled in this matter, November 17, 2010 at 4 p.m., is |

A 4

| | | |
|---|---|---|
| | | excluded for purposes of the Speedy Trial Act, 18 U.S.C. § 3161(h) (8) (A), in the interests of justice. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 10/13/2010)(dnd) (Entered: 10/13/2010) |
| 11/17/2010 | 47 | NOTICE OF ATTORNEY APPEARANCE: David E. Levine appearing for Rafael Casimiro. (Levine, David) (Entered: 11/17/2010) |
| 11/17/2010 | 48 | ORDER as to Rafael Casimiro: It is hereby ORDERED that the time between 11/17/2010, and the conference scheduled to 1/12/2011, is excluded for purposes of the Speedy Trial Act. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 11/17/2010)(ab) (Entered: 11/17/2010) |
| 01/13/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Status Conference as to Rafael Casimiro held on 1/13/2011. AUSA, Defendant, Defendant's Counsel, Court Reporter present. Next conference scheduled for 2/17/2011. Speedy Trial Time excluded until then. (dnd) (Entered: 01/14/2011) |
| 02/18/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Status Conference as to Rafael Casimiro held on 2/18/2011. Conference held on 2.17.11. AUSA, Defense counsel, Defendant, Court Reporter present. Trial date set for July 5, 2011. Speed Trial Time excluded until then. (ajc) (Entered: 02/23/2011) |
| 02/18/2011 | | ORAL ORDER as to Rafael Casimiro: Time excluded from 2/18/2011 until 7/5/2011. As to Rafael Casimiro( Jury Trial set for 7/5/2011 at 03:00 AM before Judge Naomi Reice Buchwald). (ajc) (Entered: 02/23/2011) |
| 04/08/2011 | 49 | ENDORSED LETTER: As to Rafael Casimiro addressed to Judge Naomi Reice Buchwald from David E. Levine dated 4/7/2011 re: Defense counsel writes to request that the travel restrictions of the defendant's conditions of bail be modified to allow him to travel to Clearwater Beach, Florida on April 22, 2011 through April 26, 2011. Mr. Casimiro will, of course, provide Pre−trial Services with the specifics of his travel arrangements. SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 4/8/2011)(dnd) (Entered: 04/08/2011) |
| 06/06/2011 | 50 | ENDORSED LETTER as to Rafael Casimiro, addressed to Judge Buchwald, from David E. Levine, atty for dft, dated 6/3/2011, re: dft requests permission to travel to Orlando, Florida on June 8, 2011 through June 12, 2011, for a family vacation.... −− Judge endorsed: SO ORDERED. (Signed by Judge Naomi Reice Buchwald on 6/3/2011)(ja) (Entered: 06/06/2011) |
| 06/24/2011 | 51 | FILING ERROR − DEFICIENT DOCKET ENTRY − MOTION Motion for Disclosure of Confidential Informants and Memorandum of Law. Document filed by Rafael Casimiro. (Attachments: # 1 Memorandum of Law)(Levine, David) Modified on 6/27/2011 (ka). (Entered: 06/24/2011) |
| 06/27/2011 | | ***NOTE TO ATTORNEY TO RE−FILE DOCUMENT − DEFICIENT DOCKET ENTRY ERROR. Note to Attorney David E. Levine as to Rafael Casimiro: to RE−FILE Document 51 MOTION Motion for Disclosure of Confidential Informants and Memorandum of Law. ERROR(S): Filing Error of Attachment#1. Supporting Memorandum of Law must be filed individually. Use event code Reply Memorandum of Law in Support of Motion located under Replies, Opposition and Supporting Documents. (ka) (Entered: 06/27/2011) |
| 06/27/2011 | 52 | FIRST MOTION For Disclosure of Confidential Informants. Document filed by Rafael Casimiro. (Levine, David) (Entered: 06/27/2011) |
| 06/27/2011 | 53 | MEMORANDUM in Support by Rafael Casimiro re 52 FIRST MOTION For Disclosure of Confidential Informants.. (Levine, David) (Entered: 06/27/2011) |
| 06/27/2011 | 54 | FILING ERROR − WRONG DOCUMENT TYPE SELECTED FROM MENU − FIRST MOTION in Limine. Document filed by USA as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro. (Kim, Edward) Modified on 6/28/2011 (ka). (Entered: 06/27/2011) |
| 06/28/2011 | | NOTE TO ATTORNEY TO RE−FILE DOCUMENT − DOCUMENT TYPE ERROR. Note to Attorney Edward Young Kyu Kim as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro: to RE−FILE Document 54 FIRST MOTION in Limine. Use the document type Reply Memorandum of Law in |

| | | Support of Motion found under the document list Replies, Opposition and Supporting Documents. (ka) (Entered: 06/28/2011) |
|---|---|---|
| 06/28/2011 | 55 | REPLY MEMORANDUM OF LAW in Support by USA as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro re: 52 FIRST MOTION For Disclosure of Confidential Informants.. (Kim, Edward) (Entered: 06/28/2011) |
| 06/29/2011 | 56 | FILING ERROR – WRONG DOCUMENT TYPE SELECTED FROM MENU(PROPOSED EXAMINATION OF JURORS) – Proposed Voir Dire Questions by USA as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro. (Kim, Edward) Modified on 6/30/2011 (ka). (Entered: 06/29/2011) |
| 06/29/2011 | 57 | FILING ERROR – WRONG DOCUMENT TYPE SELECTED FROM MENU(REQUEST TO CHARGE) – Proposed Jury Instructions by USA as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro. (Kim, Edward) Modified on 6/30/2011 (ka). (Entered: 06/29/2011) |
| 06/29/2011 | 58 | Proposed Voir Dire Questions by Rafael Casimiro. (Levine, David) (Entered: 06/29/2011) |
| 06/29/2011 | 59 | Request To Charge by Rafael Casimiro. (Levine, David) (Entered: 06/29/2011) |
| 06/30/2011 | | NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Edward Young Kyu Kim as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro: to RE–FILE Document 56 Proposed Voir Dire Questions. Use the document type Proposed Examination of Jurors found under the document list Trial Documents. (ka) (Entered: 06/30/2011) |
| 06/30/2011 | | NOTE TO ATTORNEY TO RE–FILE DOCUMENT – DOCUMENT TYPE ERROR. Note to Attorney Edward Young Kyu Kim as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro: to RE–FILE Document 57 Proposed Jury Instructions. Use the document type Request to Charge found under the document list Trial Documents. (ka) (Entered: 06/30/2011) |
| 06/30/2011 | 60 | Request To Charge by USA as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro. (Kim, Edward) (Entered: 06/30/2011) |
| 06/30/2011 | 61 | PROPOSED EXAMINATION OF JURORS by USA as to Jose M. Nunez, Pedro T. Rolffot, Manny A. Jimenez, Rafael Casimiro. (Kim, Edward) (Entered: 06/30/2011) |
| 07/01/2011 | 62 | MEMO ENDORSEMENT as to (S1–09–Cr–497–04) Rafael Casimiro on re: 52 FIRST MOTION For Disclosure of Confidential Informants, filed by Rafael Casimiro. ENDORSEMENT: Motion denied. So Ordered. (Signed by Judge Naomi Reice Buchwald on 7/1/2011)(bw) (Entered: 07/01/2011) |
| 07/06/2011 | 63 | REPLY MEMORANDUM OF LAW in Opposition by Rafael Casimiro. (Levine, David) (Entered: 07/06/2011) |
| 07/07/2011 | 64 | NOTICE OF ATTORNEY APPEARANCE Nicholas James Lewin appearing for USA. (Lewin, Nicholas) (Entered: 07/07/2011) |
| 07/07/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald:Status Conference as to Rafael Casimiro held on 7/7/2011. AUSAs present; D and D counsel present; court reporter present. Conference held regarding Government's motion in limine. Case adjourned until 7/11/2011. (jw) (Entered: 07/08/2011) |
| 07/08/2011 | 65 | NOTICE OF ATTORNEY APPEARANCE: David E. Levine appearing for Rafael Casimiro. *Attorney Randa D. Maher appearing for Rafael Casimiro* (Levine, David) (Entered: 07/08/2011) |
| 07/08/2011 | 66 | MEMORANDUM AND ORDER as to Rafael Casimiro re: 55 Reply Memorandum of Law in Support of Motion filed by USA.... Dft Casimiro was charged in a one–count Indictment with conspiring with others to distributE and to possess with the intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of cocaine.... Pending before us is the Government's motion in limine, in which the Government seeks to admit certain evidence at trial either as direct evidence of Casimiro's guilt or as evidence of |

A 6

| | | |
|---|---|---|
| | | Casimiro's knowledge and intent under Rule 404(b) of the Federal Rules of Evidence. For the reasons stated herein, we grant the Government's motion in part.... Accordingly, we grant the Government's motion in limine to the extent that we permit the Government to offer evidence at trial of cocaine transactions from about 2005 through 2009 involving both CW and Casimiro. Because it is apparent that evidence of Casimiro's knowledge and intent will be in dispute, we permit the Government to introduce such evidence during its case–in–chief... For the foregoing reasons, the motion (docket no. 55) is granted in part. (Signed by Judge Naomi Reice Buchwald on 7/8/2011) Copies Faxed By Chambers. (ja) (Entered: 07/08/2011) |
| 07/11/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Voir Dire held on 7/11/2011 as to Rafael Casimiro (4) count(s) 1. AUSAs present; Defendant and Defense counsel present; court reporter present. Jury selection commences and concludes. Opening statements and testimony begin. Trial adjourned until the morning of 7/12/2011. Duration: 5.5 hours. (bw) (Entered: 07/13/2011) |
| 07/11/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Rafael Casimiro (4) held on 7/11/2011. (bw) (Entered: 07/13/2011) |
| 07/11/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Rafael Casimiro (4) held on 7/11/2011. (bw) (Entered: 07/13/2011) |
| 07/12/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Rafael Casimiro (4) held on 7/12/2011. AUSAs present; Defendant and Defense counsel present; court reporter present. Trial conducted. Trial adjourned until 7/13/2011 at 9 am. Duration: 4.5 hours. (bw) (Entered: 07/13/2011) |
| 07/13/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Rafael Casimiro held on 7/13/2011. AUSAs present; Defendant and Defense counsel present; court reporter present. Trial conducted. Trial adjourned until 7/14/2011 at 9 am. (dnd) (Entered: 07/13/2011) |
| 07/14/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Rafael Casimiro held on 7/14/2011 AUSAs present; Defendant and Defense counsel present; court reporter present. Trial conducted. Trial adjourned until 7/15/2011 at 9 am. (dnd) (Entered: 07/14/2011) |
| 07/15/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Jury Trial as to Rafael Casimiro (4) held on 7/15/2011. AUSAs present; Defendant and Defense counsel present; court reporter present. Trial conducted; summations; jury deliberations. Jury returns verdict: guilty as to count one. (bw) (Entered: 07/15/2011) |
| 07/15/2011 | | JURY VERDICT as to Rafael Casimiro (4) Guilty on Count 1. (bw) (Entered: 07/15/2011) |
| 07/20/2011 | 67 | TRANSCRIPT of Proceedings as to Rafael Casimiro held on July 7, 2011 at 4:14 pm before Judge Naomi Reice Buchwald. (eef) (Entered: 07/25/2011) |
| 08/01/2011 | 68 | TRANSCRIPT of Proceedings as to Rafael Casimiro held on July 11, 12, 13, 14, 15 2011 before Judge Naomi Reice Buchwald. (eef) (Entered: 08/01/2011) |
| 10/05/2011 | 73 | ENDORSED LETTER as to (S1–09–Cr–497–04) Rafael Casimiro addressed to Judge Naomi Reice Buchwald from Attorney David E. Levine dated September 28, 2011 re: submitted to request that Mr. Rafael Casimiro's sentencing be adjourned to November 9, 2011 at 12:00 p.m. ENDORSEMENT: So Ordered. Defendant's sentencing submission is due October 28, 2011 and the Government's is due November 3, 2011. (Signed by Judge Naomi Reice Buchwald on 10/4/2011)(bw) (Entered: 10/05/2011) |
| 10/28/2011 | 74 | SENTENCING MEMORANDUM by Rafael Casimiro. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Levine, David) (Entered: 10/28/2011) |
| 11/09/2011 | 75 | SEALED DOCUMENT placed in vault. (mps) (Entered: 11/09/2011) |

| 11/14/2011 | | Minute Entry for proceedings held before Judge Naomi Reice Buchwald: Sentencing held on 11/14/2011 for Rafael Casimiro (4) Count 1. AUSA present; Defendant and Defense counsel present; court reporter present. Fatico hearing held. Defendant sentenced to six years imprisonment and five years supervised release; mandatory, standard, and special conditions of supervision imposed; $100 mandatory special assessment imposed. (ab); Modified on 11/16/2011 (bw). (Entered: 11/16/2011) |
|---|---|---|
| 11/16/2011 | 76 | JUDGMENT IN A CRIMINAL CASE as to Rafael Casimiro (4). Date of Imposition of Judgment: 11/14/2011. The defendant was found guilty on Count 1. Imprisonment: 6 YEARS. The Court recommends to the BOP that the defendant be imprisoned in the tri–state area and be permitted to participate in the RDAP if he qualifies. The defendant is remanded to the custody of the United States Marshal. Supervised Release: 5 YEARS. The defendant shall not possess a firearm, ammunition, destructive device or any other dangerous weapon. The defendant shall cooperate in the collection of DNA as directed by the probation officer. Special Conditions of Supervision – see page 4 of judgment. Assessment: $100 due immediately. (Signed by Judge Naomi Reice Buchwald on 11/16/2011) (ab) (Entered: 11/16/2011) |
| 11/16/2011 | | Judgment entered in money judgment book as #11,2234 as to Rafael Casimiro in the amount of $ 100.00, re: 76 Judgment. (jnm) (Entered: 11/17/2011) |
| 11/28/2011 | 77 | NOTICE OF APPEAL by Rafael Casimiro from 76 Judgment. Copies of Notice of Appeal mailed to Attorney(s) of Record: A.U.S.A.. (nd) (Entered: 11/29/2011) |
| 11/28/2011 | | Appeal Remark as to Rafael Casimiro re: 77 Notice of Appeal – Final Judgment. $455.00 APPEAL FILING FEE DUE. (nd) (Entered: 11/29/2011) |
| 11/29/2011 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Rafael Casimiro to US Court of Appeals re: 77 Notice of Appeal – Final Judgment. (nd) (Entered: 11/29/2011) |
| 11/29/2011 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Rafael Casimiro re: 63 Reply Memorandum of Law in Opposition, 60 Request to Charge, 74 Sentencing Memorandum, 53 Memorandum in Support of Motion, 41 Order, Set Deadlines/Hearings, Order to Continue – Speedy Trial,,,,,,,,,49 Endorsed Letter,, 77 Notice of Appeal – Final Judgment, 25 Endorsed Letter, 64 Notice of Attorney Appearance – USA, 61 Proposed Examination of Jurors, 65 Notice of Attorney Appearance – Defendant, 62 Memo Endorsement, 50 Endorsed Letter, 26 Notice of Attorney Appearance – Defendant, 55 Reply Memorandum of Law in Support of Motion, 73 Endorsed Letter, Set Deadlines/Hearings,, 48 Order, 47 Notice of Attorney Appearance – Defendant, 31 Endorsed Letter, Set Hearings,,,, 24 Indictment, 38 Order, Set Hearings,, 76 Judgment,,, 36 Order to Continue – Speedy Trial, Set Deadlines/Hearings,, 59 Request to Charge, 46 Order to Continue – Speedy Trial, Set Hearings,, 52 FIRST MOTION For Disclosure of Confidential Informants., 58 Proposed Voir Dire Questions, 66 Order,,,,, 43 Order to Continue – Speedy Trial were transmitted to the U.S. Court of Appeals. (nd) (Entered: 11/29/2011) |
| 12/19/2011 | 79 | TRANSCRIPT of Proceedings as to Rafael Casimiro held on 11/14/2011 before Judge Naomi Reice Buchwald. (pl) (Entered: 12/22/2011) |
| 02/17/2012 | 81 | SEALED DOCUMENT placed in vault. (mps) (Entered: 02/17/2012) |
| 03/16/2012 | 83 | SEALED DOCUMENT placed in vault. (mps) (Entered: 03/16/2012) |
| 04/17/2012 | 84 | MANDATE of USCA (certified copy) as to Rafael Casimiro re: 77 Notice of Appeal – Final Judgment USCA Case Number 11–5019. IT IS HEREBY ORDERED that the appeal is DISMISSED. Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit, Clerk USCA. Issued As Mandate: 04/17/2012. (nd) (Entered: 04/17/2012) |
| 05/15/2012 | 87 | ORDER of USCA (Certified Copy) as to Rafael Casimiro re: 77 Notice of Appeal – Final Judgment USCA Case Number 11–5019. IT IS HEREBY ORDERED that the motion by appellant Casimiro to recall the mandate and reinstate the appeal is GRANTED. The request to be relieved as counsel, to accept the pro se motion for IFP and for appointment of counsel, will be determined in due course. Catherine |

| | | O'Hagan Wolfe, Clerk USCA. Certified: 05/15/2012. (nd) (Entered: 05/15/2012) |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA           :       <u>INDICTMENT</u>

      - v. -                      :       S1 09 Cr. 497 (NRB)

RAFAEL CASIMIRO,                    :

             Defendant.       :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY F.
DOC #:
FILED: 3|9|10

<u>COUNT ONE</u>

The Grand Jury charges:

1.   From at least in or about April 2009, in the
Southern District of New York and elsewhere, RAFAEL CASIMIRO, the
defendant, and others known and unknown, unlawfully,
intentionally and knowingly did combine, conspire, confederate
and agree together and with each other to violate the narcotics
laws of the United States.

2.   It was a part and an object of the conspiracy that
RAFAEL CASIMIRO, the defendant, and others known and unknown,
would and did distribute and possess with the intent to
distribute a controlled substance, in violation of 21 U.S.C. §
841(a)(1).

3.   The controlled substance involved in the offense
was 500 grams and more of mixtures and substances containing a
detectable amount of cocaine, in violation of 21 U.S.C. §
841(b)(1)(B).

Overt Act

4.    In furtherance of the conspiracy and to effect the
illegal object thereof, the following overt act, among others,
was committed in the Southern District of New York and elsewhere:

a.    On or about April 28, 2009, RAFAEL CASIMIRO,
the defendant, drove to Yonkers, New York.

(Title 21, United States Code, Section 846.)

FORFEITURE ALLEGATIONS

5.    As a result of committing the controlled substance
offense alleged in Count One of this Indictment, RAFAEL CASIMIRO,
the defendant, shall forfeit to the United States, pursuant to 21
U.S.C. § 853, any and all property constituting or derived from
any proceeds the said defendant obtained directly or indirectly
as a result of the said violation and any and all property used
or intended to be used in any manner or part to commit and to
facilitate the commission of the violation alleged in Count One
of this Indictment.

Substitute Asset Provision

6.    If any of the forfeitable property described
above, as a result of any act or omission of RAFAEL CASIMIRO, the
defendant:

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or deposited
with, a third person;

-2-

A 11

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 21, United States Code, Sections 841(a)(1), 846, and 853.)

FOREPERSON

PREET BHARARA
United States Attorney

-3-

A 12

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

- v. -

**RAFAEL CASIMIRO,**

Defendant.

---

**INDICTMENT**

S1 09 Cr. 497 (NRB)

(Title 21, United States Code,
Section 846.)

---

PREET BHARARA
United States Attorney.

---

_(signature)_

*March 9 2010*

*Filed Superseded Indictment in S1 09 CR 497(a₂)*

*Freeman USMJ*

A 13

77

17CUCAS1

1           (In open court, jury present)

2           THE COURT:  One of the advantages of being on jury

3    duty is the air conditioning.

4           I think some of you learned that it is hard to get

5    through security in the morning, so tomorrow if you will make

6    an effort to get here a little earlier.  If we think that you

7    are stuck, we can get you to the front of the line.  You are

8    also entitled to tell the guards that you are a sitting juror

9    and they can move you up, so take advantage of your status.

10          Mr. Lewin, do you want to continue?

11          MR. LEWIN:  Yes, your Honor.  Thank you.

12   JOSE MANUEL NUNEZ,

13       called as a witness by the government,

14    having been duly sworn, testified through the interpreter

15    as follows:

16   DIRECT EXAMINATION

17   BY MR. LEWIN:

18   Q.  Mr. Nunez, yesterday we were discussing the origin of this

19   cocaine deal, do you remember that?

20   A.  Yes.

21   Q.  In what state did this cocaine deal originate?

22   A.  Florida.

23   Q.  Did there come a point in time when you traveled to another

24   state in connection with this deal?

25          MR. LEVINE:  Objection as to leading, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17CUCAS1                    Nunez - direct

1        THE COURT:  Overruled.

2    A.  Yes.

3    Q.  What state?

4    A.  New York.

5    Q.  Briefly, why did you travel to New York?  What were you

6    hoping would happen?

7    A.  To do negotiations here.

8    Q.  What kind of negotiations?

9    A.  On narcotics.

10   Q.  What state were you arrested in?

11   A.  New York.

12   Q.  What city?

13   A.  Yonkers.

14   Q.  When you were arrested, did the police seize anything?

15   A.  Yes.

16   Q.  What did the police seize?

17   A.  The money.

18   Q.  How much money?

19   A.  $54,000.

20   Q.  In what form was that $54,000 that the police seized when

21   you were arrested in Yonkers?

22   A.  Cash.

23   Q.  What was that $54,000 for?

24   A.  To buy two kilos.

25   Q.  Two kilos of what?

79

```
17CUCAS1                    Nunez - direct
```

1    A.   Cocaine.

2    Q.   What city were you when you first received that $54,000 for

3    the two kilos of cocaine?

4    A.   In Brooklyn.

5    Q.   Who brought that $54,000 to Brooklyn?

6    A.   El Gordo.

7    Q.   Do you see that man in the courtroom today, sir?

8    A.   Yes.

9    Q.   Please identify him or her by an article of clothing that

10   he or she is wearing.

11   A.   He has a gray suit on and a white shirt.

12          MR. LEWIN:   Your Honor, the record should reflect that

13   the defendant is wearing a gray suit and a white shirt.

14   Q.   Mr. Nunez, let's make this clear.   Is this the man that

15   brought the $54,000 to Brooklyn, New York to purchase two

16   kilograms of cocaine?

17   A.   Yes.

18          MR. LEWIN:   The record should reflect that the witness

19   has identified the defendant.

20          THE COURT:   It should.

21   Q.   I have placed before you what's been premarked as

22   Government Exhibit 201.   What is that?

23   A.   This is a photograph of Gordo.

24   Q.   Sir, did you call him Gordo or are you using that term as a

25   descriptive term?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17CUCAS1                    Nunez - direct

1   A.   It is a descriptive term because I don't know his name.

2   Q.   Is it fair to say that's a picture of the defendant?

3   A.   Yes.

4        MR. LEWIN:  Your Honor, the government offers

5   Government Exhibit 201.

6        MR. LEVINE:  No objection, your Honor.

7        THE COURT:  It is received.

8        (Government Exhibit 201 received in evidence)

9        MR. LEWIN:  May I publish it, your Honor?

10       THE COURT:  Yes.

11  BY MR. LEWIN:

12  Q.   Mr. Nunez, I want to return now to where we left off

13  yesterday.  We were talking about the woman you knew as Pilar?

14  A.   Yes.

15  Q.   Soon after your first meeting with Pilar, did you speak to

16  Mr. Manny Jimenez about Pilar?

17  A.   Yes.

18  Q.   What did Mr. Jimenez tell you about Pilar, who she was?

19       MR. LEVINE:  Judge, this was asked and answered

20  yesterday.

21       THE COURT:  Overruled.

22  A.   May I have the question again, please?

23  Q.   What if anything did Mr. Jimenez tell you about who Pilar

24  was?

25  A.   That she was a girl who was involved in big drug

17EUCAS1                          Gonzalez - direct

1    Q.  Prior to entering into that cooperation agreement with the
2    government, what did you do?
3    A.  I met up with the government a couple of times, and I had
4    to give them information about a gentleman named Ajax and also
5    confess about what happened the day of Pedro's arrest in
6    August -- in April -- sorry.
7    Q.  Aside from talking about Ajax and the day that Pedro was
8    arrested, did you talk to the government about anything else?
9    A.  Not that I can remember.
10   Q.  What about any details of your background?
11   A.  Yes, I did.
12   Q.  What did you tell the government about?
13   A.  About prior Ecstasy deals.
14   Q.  Did you also help agents investigate Ajax?
15   A.  I did.
16   Q.  Prior to coming to the courtroom here today, approximately
17   how many times have you met with the government?
18   A.  Approximately 11 to 12 times.
19   Q.  After you pled guilty and after you entered into that
20   cooperation agreement with the government, did you withhold
21   certain information from the government?
22   A.  I did.
23   Q.  What did you withhold from the government?
24   A.  I withheld previous drug transactions that I did in my
25   past.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17EUCAS1                    Gonzalez - direct

1   Q.  What kind of drug transactions?

2   A.  Cocaine, some marijuana and steroids.

3   Q.  Aside from those drug transactions, was there any other

4   information that you withheld from the government,

5   Mr. Gonzalez?

6   A.  A gun sale as well.

7   Q.  Any other crime that you withheld from the government?

8   A.  The escorting, driving around the escorts.

9   Q.  Your work for the escort agency?

10  A.  Yes.

11  Q.  Were you obligated under your cooperation agreement to tell

12  the government about all of your criminal activities?

13  A.  Yes.

14  Q.  When you withheld information from the government, did you

15  know that what you were doing was a violation of your

16  cooperation agreement?

17  A.  I did.

18  Q.  When you withheld that information from the government did

19  you know that what you were doing was wrong?

20  A.  I did.

21  Q.  Prior to telling the government about those criminal

22  activities, did you also at some point delete a photograph of

23  money that had been used to buy drugs?

24  A.  Yes, I did.

25  Q.  Where did you delete it from?

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

373

17EUCAS1                    Gonzalez - direct

1  A.   It was deleted from my Gmail account.

2  Q.   Did you take any other photographs with that same money

3  that had been used to buy drugs?

4  A.   Yes, I did.

5  Q.   Did you eventually turn over one of those photographs to

6  the government?

7  A.   Yes, I did.

8  Q.   Mr. Gonzalez, I am going to show you what has been marked

9  as Government Exhibit 3501-22.  Do you recognize that?

10  A.   I do.

11  Q.   What is it?

12  A.   It is one of the images that I took of the money that day.

13  Q.   Does that photograph fairly and accurately depict the

14  money?

15  A.   Correct.

16        MR. KIM:  Your Honor, the government offers Government

17  Exhibit 3501-22.

18        MR. LEVINE:  No objection.

19        THE COURT:  Received.

20        (Government Exhibit 3501-22 received in evidence)

21  BY MR. KIM:

22  Q.   Mr. Gonzalez, I am going to take this from you for a

23  moment.

24        Mr. Gonzalez, there is money at the bottom of the

25  photograph.  Is that the money that was used to buy the drugs?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17EUCAS1                    Gonzalez - direct

1    A.  Yes, it was.

2    Q.  Without saying that individual's name, who is holding the

3    money in the picture?

4    A.  My little cousin.

5    Q.  Mr. Gonzalez, did you eventually admit to the government

6    that you had withheld information?

7    A.  I did.

8    Q.  That you had lied to the government, did you admit that?

9    A.  Yes, I did.

10   Q.  Approximately when did you admit to the government that you

11   had lied?

12   A.  I'm not sure right now.

13   Q.  Was it within the last six months?

14   A.  Yes, it was.

15   Q.  Did you also tell the government that you had deleted the

16   photograph?

17   A.  Yes, I did.

18   Q.  Mr. Gonzalez, sitting in this witness stand today, have you

19   now told the government every crime that you had committed?

20   A.  Yes.

21   Q.  Have you been sentenced yet for the crimes that you pled

22   guilty to?

23   A.  No, I have not.

24   Q.  Mr. Gonzalez, can your chair come up a little further and

25   maybe lean the microphone in towards you; you don't need to

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

A 21

17E6CAS2                        Gonzalez - cross

1   innocent?

2   A.   I am not -- that is not what I understood, sir.

3   Q.   Let's go over all the things you understood in this case.

4   Let's start with the first time within hours of your arrest you

5   are up at the U.S. Attorney's Office with Mr. Kim and his team

6   of agents talking to them about how you want to get out of this

7   case.  Do you remember that?

8   A.   Yes, sir.

9   Q.   You were up in the U.S. Attorney's Office within hours of

10  being arrested allegedly confessing everything you have done,

11  is that correct?

12  A.   Well, yes, sir.

13  Q.   I say "allegedly" because you lied to them at that first

14  meeting, is that correct?

15  A.   That is correct.

16  Q.   You lied to them at the second meeting, is that correct?

17  A.   That is correct.

18  Q.   You lied to them at the third meeting, is that correct?

19  A.   I am not sure how many meetings there were.

20  Q.   You testified there were 11 meetings.

21          Did you meet with them on November 12th of '09 at your

22  first initial meeting with an attorney present?

23  A.   Yes, sir.

24  Q.   You signed a contract with them called a proffer agreement,

25  do you remember that?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17E6CAS2                    Gonzalez - cross

1   A.  Yes, sir.

2   Q.  You lied to them at that meeting, is that correct?

3   A.  Yes, sir.

4   Q.  You met with them again on January 13th of 2010 and you

5   lied to them at that meeting, is that correct?

6   A.  I am not sure of the date, sir.

7           MR. LEVINE:  Can I approach the witness, Judge?

8           THE COURT:  Yes.

9   Q.  I am showing you what is previously marked as Defendant's

10  Exhibit A.  Do you recognize this document?  Look at both

11  pages.

12  A.  Yes.

13  Q.  Do you recognize that document?

14  A.  Yes, I do, sir.

15  Q.  Do you recognize your signature on the second page?

16  A.  I do.

17  Q.  At this time I am going to ask to move Defendant's A into

18  evidence.

19          MR. KIM:  No objection.

20          THE COURT:  Received.

21          (Defendant's Exhibit A received in evidence)

22  BY MR. LEVINE:

23  Q.  Looking at the second page, do you recall having a meeting

24  on January 13th of 2010?

25  A.  Yes, I do.

17E6CAS2                    Gonzalez - cross

1   Q.  Did you lie to the government on that day?

2   A.  Yes, sir.

3   Q.  Did you lie to Mr. Kim on that day?

4   A.  Yes, sir.

5   Q.  Did you lie to the agents on that day?

6   A.  Yes, sir.

7   Q.  This document, this proffer agreement which is now in

8   evidence, what did you understand this document to mean?

9   A.  I am sorry?

10  Q.  What did you understand this document to mean?  What was

11  your understanding about this document?

12  A.  That I had to be truthful.

13  Q.  Can you see where it says paragraph one?  Can you read

14  after the bold print where it says, The client?  You can see

15  that where you are?

16  A.  I can.

17  Q.  Can you read that for the jury?

18  A.  The client has agreed to provide the government with

19  information and to respond to questions so that the government

20  may evaluate the client's information and respond in making --

21  I cannot see -- making prosecutorial decisions.

22  Q.  That's enough.  So you signed a contract with your lawyer

23  present saying that you would tell them the truth so they can

24  evaluate your credibility, is that correct?

25  A.  Correct.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17E6CAS2                    Gonzalez - cross

1   Q.  And they were evaluating your credibility to decide how to
2   proceed in this case, is that correct?
3   A.  Correct.
4   Q.  And you lied to them at that meeting, is that correct?
5   A.  That is correct, sir.
6   Q.  And this proffer agreement, this continued all the way
7   through until you eventually got a cooperation agreement, is
8   that correct?
9   A.  I am not sure.
10  Q.  When you met with them on January 13th of 2010, were you
11  supposed to be telling them the truth?
12  A.  Yes, sir.
13  Q.  So they could evaluate your credibility?
14  A.  Yes, sir.
15  Q.  To decide how to continue in this case?
16  A.  I suppose so, sir, yes.
17  Q.  You suppose so or you know so?  Did you think it was
18  important to tell them the truth about your criminal activity?
19  A.  Yes.
20  Q.  But you withheld that information?
21  A.  Yes.
22  Q.  All this information about all these allegedly cocaine
23  deals with Rafi Casimiro was not told to the government on
24  November 12th of 2009, is that correct?
25  A.  That is correct.

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

442

17E6CAS2                    Gonzalez - cross

1    Q.  And all these alleged cocaine deals with E-Rod and Julio
2    and in the basement and all these things that we talked about,
3    and we'll get to them any little while, and all these
4    multi-kilos deals was not told to the government on
5    November 12th of '09, was it?
6    A.  Correct.
7    Q.  It wasn't told to the government on January 13th of 2010,
8    was it?
9    A.  Correct.
10   Q.  And it wasn't told to the government on March 18th of 2011,
11   was it?
12   A.  I am not sure.
13   Q.  Isn't it true that you found out that Rafael Casimiro was
14   going to trial about three months ago?
15   A.  Approximately perhaps.
16   Q.  Isn't it true that when you found out that you were going
17   to have to get on the witness stand and be cross-examined about
18   your life that is when you first decided to tell the government
19   the truth, is that correct?
20   A.  No, it is not.
21   Q.  You didn't tell the government the truth about anything
22   that you had done in your life until April 14th of 20011, three
23   months before this trial, is that correct?
24   A.  Again, I am not sure of the day, sir.
25   Q.  Is that roughly about the time?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17E6CAS2                        Gonzalez - cross

1    A.   I am not sure what the date is at all.

2                   (Continued on next page)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.              (212) 805-0300

17EUCAS3                    Gonzalez - cross

1   Q.  Well, it wasn't back in '09, was it?

2   A.  That's correct.

3   Q.  And it wasn't for the whole full year of 2010, was it?

4   A.  I believe so, yes.

5   Q.  So was it around New Year's of this year?

6   A.  I'm not sure of the date, sir.

7   Q.  How many times have you met with the government in 2011?

8   A.  I'm not sure.

9   Q.  That must have been a big important moment in your life

10  when you decided to confess about the prostitution ring and the

11  Ecstasy ring and all of these kilos of cocaine, right?

12  A.  Not to remember a date, though, sir.

13  Q.  Did you go up there with an attorney?

14  A.  Yes, sir.

15  Q.  And did you tell your attorney that you had been lying to

16  the government for the past 18 months?

17          MR. KIM:  Objection.

18          THE COURT:  Sustained.

19  Q.  November of '09, you lied to the government?

20  A.  Yes, sir.

21  Q.  In December of '09, you hadn't told the truth yet?

22  A.  Correct, sir.

23  Q.  All through the year of 2010, you hadn't told the truth,

24  right?

25  A.  Yes, sir.

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

17EUCAS3                    Gonzalez - cross

1   Q. So we got at least 14 months in a case that is 20 months
2   old that you have been lying to the government?
3   A. Yes, sir.
4   Q. As a matter of fact, you got a cooperation agreement, a
5   cooperation agreement that you told this jury that you hope to
6   get time served on under false pretenses, is that correct?
7   A. I'm not sure.
8   Q. Did you tell the government the truth about your
9   background?
10  A. I did now, yes.
11  Q. After you already got the cooperation agreement, is that
12  correct?
13  A. Correct.
14  Q. And after you took an oath in front of a federal judge to
15  tell the truth, did you plead guilty with the understanding
16  that you would receive a benefit under that 5K letter?
17              MR. KIM:  Objection.
18              THE COURT:  Sustained.
19  Q. When you pled guilty to this cocaine conspiracy, at that
20  point had you told the government the truth about your
21  background and your involvement?
22  A. At the point -- repeat the question, please.
23              (Discussion off the record among counsel)
24  Q. You signed a cooperation agreement which is now in evidence
25  on April 1 of 2010.  You just told this jury that in 2010 you

SOUTHERN DISTRICT REPORTERS, P.C.              (212) 805-0300

17EUCAS3                    Gonzalez - cross

1   were not honest with the government, is that correct?

2   A.   Correct.

3   Q.   So you got this cooperation agreement under false

4   pretenses, is that correct?

5   A.   If that's what that means, yes, sir.

6   Q.   On April 1 of 2010, the day you signed that cooperation

7   agreement, you actually pled guilty to this cocaine conspiracy,

8   is that correct?

9   A.   I'm not sure of the date, but I did plead guilty to the

10   cocaine conspiracy, yes.

11   Q.   Do you recall the judge when you pled guilty asking you

12   about placing you under oath and making false statements about

13   important facts that could be used against you?  Do you

14   remember that being said to you by the judge?

15   A.   I don't remember.

16   Q.   Have you been arrested for perjury?

17   A.   No, I have not, sir.

18   Q.   Have you been arrested for obstruction of justice?

19   A.   No, I have not, sir.

20   Q.   Even though you lied to the government for at least 14

21   months, has the government told you that they are not giving

22   you a 5K letter?

23   A.   No, they have not, sir.

24   Q.   Even though for at least 14 months, you withheld all of

25   these drug deals about Rafael Casimiro, the government has not

17EUCAS3                    Gonzalez - cross

1  told you they are not going to give you a 5K letter, is that
2  your testimony?
3  A.   That is correct, sir.
4  Q.   The cooperation agreement was placed into evidence, and I
5  would like you to look at the first line of the second
6  paragraph.  Can you read that for the jury?
7  A.   You said the first line of the second paragraph?
8  Q.   Yes.  Where it starts "it is understood."
9  A.   "It is understood that Gonzalez shall truthfully and
10  completely disclose all information with respect to the
11  activities of himself and others concerning all matters about
12  which this office inquires of him, which information can be
13  used for any purpose."
14  Q.   You didn't do that, did you?
15  A.   No, I did not.
16  Q.   And yet this cooperation agreement is still in effect,
17  isn't it?
18  A.   Well, I'm not sure.
19  Q.   Didn't you testify on direct that you could get a maximum
20  of up to 40 years in jail, is that correct?
21  A.   That is correct.
22  Q.   But you could also get time served, isn't that correct?
23  A.   If the 5K1 letter is there, correct.
24  Q.   So the basis for this cooperation agreement, your hope for
25  getting a 5K letter is still there, correct?

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17EUCAS3                    Gonzalez - cross

1   A.  The hope is, yes, sir.

2   Q.  Can you read page 3, the third paragraph -- why don't you

3   read the whole paragraph?

4   A.  Which one?

5   Q.  Where it starts "it is understood"?

6   A.  There are two that start with that.

7   Q.  They are all -- right here, do you see where my finger is?

8   A.  Yes.

9   Q.  I am going to try to enlarge that for you.

10          Can you read that for the jury?

11          MR. KIM:  Your Honor, can the witness stand up to read

12  it?

13          THE COURT:  Sure.

14  A.  "It is understood that, should this office determine either

15  that Gonzalez has not provided substantial assistance in an

16  investigation or prosecution, or that Gonzalez has violated any

17  provision of this agreement, such a determination will release

18  this office from any obligation to file a motion pursuant to

19  Section 5K1.1 of the Sentencing Guidelines and 18, U.S.C. -- is

20  that superscript?

21  Q.  You can skip it.

22  A.  -- "but will not entitle Gonzalez to withdraw his guilty

23  plea once it has been entered."

24  Q.  You were told in writing that if they determined that --

25  you can sit down -- you misled them, they are going to

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

17EUCAS3                    Gonzalez - cross

1    terminate the agreement, is that correct?

2    A.   That's correct.

3    Q.   But they haven't terminated the agreement, have they?

4    A.   No, they have not.

5    Q.   Even though you lied to them from Day 1, they still have

6    not terminated the agreement, is that correct?

7    A.   That is correct.

8    Q.   And you lied to them about major, major facts, both in this

9    case and about your background, isn't that correct?

10   A.   That is correct.

11   Q.   Let's start with your criminal history.  You testified on

12   direct that you are a career marijuana user, is that correct?

13   A.   I'm not sure what that term means, sir.

14   Q.   Did you testify on direct that you smoked marijuana every

15   day?

16   A.   At some point in my life I did, yes.

17   Q.   And what would that point be?

18   A.   It was from the year 2002 on and off.

19   Q.   Up until 2009, is that correct?

20   A.   No, that is not correct.

21   Q.   And you sold marijuana from 2001 all the way through to

22   2009, is that correct?

23   A.   On and off, yes, it is.

24   Q.   Every time you did a marijuana deal, did you break the law?

25   A.   I did.

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

17EUCAS3                    Gonzalez - cross

1   Q.   Prior to the arrest -- so we will leave Pedro and the

2   cousin out of this -- was it not your testimony on direct that

3   other than a meeting that you claim happened with Ajax, none of

4   these people ever met Rafael Casimiro, is that correct?

5   A.   That is incorrect.

6   Q.   Can you tell us who met Rafael Casimiro?

7   A.   G and Argulese.

8   Q.   And they met him during the course of the coke deal?

9   A.   That is correct.

10  Q.   Can you tell us when that coke deal happened?

11  A.   No, I cannot.

12  Q.   Isn't it true in fact that you are the only person who can

13  be identified purchasing cocaine in any of these transactions?

14        MR. KIM:   Objection.

15        THE COURT:   Sustained.

16  Q.   In fact you are just adding Rafael Casimiro's name to every

17  single drug deal that you have done in your life, isn't that

18  correct?

19  A.   No, because I just mentioned one that he was there as well

20  with other people.

21  Q.   You mentioned it, is that correct?

22  A.   That is correct.

23  Q.   You have photographs of drug money, correct?

24  A.   I do.

25  Q.   Do you have any photos of Rafi Casimiro with drugs?

482

17EUCAS3                    Gonzalez - cross

1          MR. KIM:  Your Honor, he is cutting off his answers.

2    Q.  Isn't it true that the only reason you confessed all of

3    your lies to the government is that you found out Rafi was

4    going to trial?

5    A.  No, that's incorrect.

6    Q.  You didn't confess your lies to the government until

7    sometime in 2011, is that correct?

8    A.  I believe so.

9    Q.  At a meeting when you found out that you were getting

10   prepared for trial, isn't that correct?

11   A.  It didn't happen at a meeting when they found out, no.

12   That's incorrect.

13   Q.  Around the same time you started sending word out to Rafi

14   not to go to trial, is that correct?

15   A.  It was only one time in that Best Buy location when I

16   suggestively told a friend of Rafael that he was stupid for

17   going to trial.

18   Q.  So you suggested to this friend to pass messages to Rafael,

19   is that correct?

20   A.  As a friend, yeah, that is --

21   Q.  As whose friend, Rafael's friend?

22   A.  That is correct.

23   Q.  You are his friend, right?

24   A.  Well --

25   Q.  -- at this point in time in April of 2011, you are Rafael's

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

3

```
1bencas1                    Hearing
```

1           (In open court)

2           (Case called)

3           THE DEPUTY CLERK:  Is the government present and ready

4    to proceed?

5           MR. KIM:  Yes, Edward Kim for the government, your

6    Honor.  I am joined by defendant Eric Cora from the NYPD.

7           MR. LEVINE:  David Levine for the defendant.  I am

8    joined by attorney Randa Maher.

9           THE COURT:  Good morning.

10          All right.  As everyone is aware, this case is on for

11   sentencing today.

12          The defendant's memorandum in aid of sentencing raises

13   a number of issues, one of which at least requires resolution

14   by what is known as a Fatico hearing.

15          I guess the other issue, namely, whether the defendant

16   is entitled to, shall we say, points off for acceptance of

17   responsibility under Section 3E1.1 of the guidelines is a legal

18   issue which obviously doesn't require an evidentiary hearing.

19          Before we turn to those issues, let me just be sure

20   that I have received all the documents that the parties have

21   submitted in respect of the sentencing.

22          First, of course, is the report of the probation

23   department, my copy bears a cover memo date of October 11,

24   2011.  As I mentioned earlier, I have the memorandum in aid of

25   sentencing from defense counsel, and I also have a letter from

1bencas1                    Hearing

1   Mr. Levine dated November 1, 2011 correcting a typo in the

2   memorandum.

3           I also have the government's letter of November 3.

4           Are there any other documents that I should have

5   received in connection with the sentencing?

6           MR. KIM:  No, your Honor.

7           MR. LEVINE:  None from the defense, your Honor.

8           THE COURT:  Let me confirm that both of you have

9   received a copy of the report of the probation department; and

10  in the case of defense counsel, have you had an opportunity to

11  review it with Mr. Casimiro and do you have any objections to

12  it?

13          MR. LEVINE:  I have had the opportunity to review it

14  with Mr. Casimiro.  As indicated in my letter to probation,

15  which is Exhibit 2 to my memorandum, we believe that the

16  defendant is safety valve eligible.  We believe that the

17  relevant conduct amount should be in the amount of two to three

18  and a half kilos, and the defendant is eligible as detailed in

19  the memorandum for acceptance of responsibility.  So those are

20  my three objections to the probation report.

21          THE COURT:  Just for some legal clarification, the

22  issue of safety valve eligibility and the quantity of drugs for

23  guidelines purposes is essentially the same factual issue, at

24  least as to the number of transactions between Mr. Casimiro and

25  Mr. Gonzalez.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

1bencas1                    Hearing

1    MR. LEVINE:  Can you repeat that, Judge.  I am not
2    sure I followed you.
3    THE COURT:  All right.  Let me put it simply, if I
4    can, you're raising the issue of whether Mr. Casimiro's
5    guidelines are driven by a quantity of cocaine, specifically,
6    between two kilograms and three and a half kilograms; or,
7    alternatively, as probation and the government argue, over
8    three and a half kilograms.  Which of those two levels the
9    defendant is in depends, does it not, on the question of
10   whether he is telling the truth or Mr. Gonzalez is telling the
11   truth about the number of transactions between them, because
12   Mr. Casimiro now admits to this charged crime, the subject of
13   the trial, plus four other transactions.
14   But the four transactions plus the transaction
15   involved in the trial do not add up to more than three and a
16   half kilos.  But if I believe Mr. Gonzalez, then the number
17   exceeds three and a half kilos; and in that case he's in a
18   higher category for sentencing purposes, guidelines purposes.
19   So my question is, is not the issue on essentially safety valve
20   eligibility fundamentally the same as the guidelines question
21   in terms of quantity?
22   MR. LEVINE:  Judge, it is in some respects.  But I
23   think that our position is that when these other deals were
24   discussed I believe on July 7, prior to the trial under the
25   government's motion in limine, and we had the discussion about

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

1bencas1                    Hearing

1  those deals and how they would be coming in, it is our position
2  that Mr. Casimiro told the truth at the safety valve, but those
3  deals, while they are relevant for relevant conduct shouldn't
4  even be considered as part of the safety valve proffer because
5  they really are not --

6            THE COURT:   Part of the same course of conduct?
7            MR. LEVINE:   -- the same course of conduct.
8            THE COURT:   OK.  Tell me, then, how can four of them
9  be part of the same course of conduct, but the rest of them
10  aren't?

11            MR. LEVINE:   I think none of them are.  However, when
12  my client is sitting in a proffer session at the U.S.
13  Attorney's Office and they start asking him questions, I am not
14  going to advise him to pick and choose which questions should
15  be asked and answered.  He truthfully told of his involvement
16  in this case and of his prior involvement.  But even if the
17  Court or the government were to find that he lied on those,
18  they are not part of the course of conduct.  The safety valve
19  is for this trial, and on this trial, almost everything that he
20  said from that meeting corresponded with what Mr. Gonzalez said
21  at trial.

22            There are only really three differences.  The first is
23  whether there was an uncle involved; the second is how much
24  money he actually brought to the house in Staten Island; and,
25  third, how many drug deals he's done with Mr. Gonzalez over the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1bencas1                    Hearing

1   past five years.  Those three issues.

2          As Mr. Kim acknowledged in our phone conference on

3   Thursday, there is no independent proof that Mr. Gonzalez is

4   telling the truth, and there is no independent proof that Mr.

5   Casimiro is lying.  So they are basing their denial of safety

6   valve on the trial testimony of Mr. Gonzalez, who our position

7   is had lied to the government all the way through up until the

8   start of the trial, right before the start of the trial.

9          So my whole point is I think it is an unfair denial of

10  the safety valve, because there is nothing independent that

11  disputes what he says.  And their major point, which, of

12  course, as your Honor correctly pointed out, is what drives the

13  sentencing here, is whether we are talking about two to three

14  and a half kilos or seven or eight or nine kilos, but that is a

15  separate issue which really should only be coming in for

16  relevant conduct and not for the safety valve proffer.

17         MR. KIM:  Your Honor, I think that Mr. Levine's point

18  on the scope of the safety valve is rife with contradictions.

19  I think Mr. Levine acknowledges this is relevant conduct.  But

20  the guideline statute, the guideline provision 5C1.2 at

21  subsection (a), sub (5), incorporates a definition of relevant

22  conduct within the scope of the proper bounds of safety valve

23  inquiry.  It says that not later than at the time of the

24  sentencing hearing the defendant has truthfully provided to the

25  government all information and evidence the defendant has

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

1bencas1                    Hearing

1  concerning the offense or offenses that were part of the same
2  course of conduct or of a common scheme or plan.

3       So relevant conduct is subsumed within the safety
4  valve inquiry.  Clearly we are within the bounds of what is
5  relevant conduct here.  We are talking about prior transactions
6  that the defendant engaged in with a cooperating witness right
7  before, leading up until right before the deal in question in
8  this case was committed.

9       It was the same accomplice.  According to our
10 cooperating witness, the same rough methodology of how they did
11 business.  It's within the relevant conduct definition.

12      It's absolutely permissible for the government to look
13 at the defendant's account of those events to determine whether
14 he is in fact safety valve eligible.

15      And I will add that that is not the only issue.  I
16 think, as Mr. Levine alluded to, the other issue in determining
17 whether or not the defendant is eligible for safety valve
18 relief is whether he's being truthful about his conduct on
19 April 28, 2009.  And the government's position is that he has
20 not been truthful about that, because he's denied bringing the
21 entire sum of money that was attempted to be used to purchase
22 the two kilograms of cocaine.  So absolutely I think for both
23 reasons the defendant has not yet qualified for safety valve
24 relief.

25      THE COURT:  Before I forget, can I just confirm that

9

1bencas1                    Hearing

1   the government received a copy of the presentence report?

2          MR. KIM:  Yes, your Honor, I have.  Thank you.

3          THE COURT:  Do you have any objections?

4          MR. KIM:  No.

5          THE COURT:  I think I would feel remiss if I did not

6   say the following to Mr. Casimiro at this point.

7          Mr. Casimiro, there are only two people, you and Mr.

8   Gonzalez, that know the truth about your dealings with each

9   other.  If this hearing proceeds, my job will be to make a

10  decision about which of you is in fact telling the truth.  I

11  have not made that decision yet.  But I want you to understand

12  something:  That if I find at the end of the hearing that you

13  have lied to me, your sentence will be greater than what it

14  would be if we never had this hearing.

15         That's for two reasons.

16         One, it unacceptable for anyone to lie to a judge;

17  and, secondly, because if I find that you're lying, that means

18  that you have not, even as of today, accepted full

19  responsibility for your criminal conduct, which you have now at

20  least in part admitted to.

21         So I just want you to be sure before we go ahead that

22  you understand that there is, along with the benefit that you

23  hope to gain, a real risk.  It is not my decision, just as your

24  decision to go to trial was not my decision, not your lawyer's

25  decision, it's your decision.  This is also not my decision.

1bencas1                    Hearing

1    But I want you to know that along with the potential

2    benefit is a risk.  I have no problem going ahead.  It is

3    totally up to you.  Please understand, there is a decision that

4    has been made.  I just want you to be sure, because you also

5    made a decision to go to trial which put you at certain risks

6    that didn't have to be.

7          THE DEFENDANT:  I understand.

8          THE COURT:  All right.  Then, Mr. Levine, do you want

9    to call your client to the stand?

10         Is that how we should be proceeding.

11         MR. KIM:  It is his burden, your Honor, so I believe

12   he should be testifying first.  If he intends to.

13         MR. LEVINE:  The defense calls Mr. Casimiro to the

14   stand.

15         THE COURT:  OK.

16    RAFAEL CASIMIRO,

17       the Defendant,

18       having been duly sworn, testified as follows:

19   DIRECT EXAMINATION

20   BY MR. LEVINE:

21         MR. LEVINE:  Judge, before I continue, I just wanted

22   some clarity.  And I don't want to tie up the Court's whole

23   day.  Your Honor has had the opportunity to read the PSR and my

24   submission.  Would the Court like me to just focus on the

25   events of April 28?  Do you want some background from the

1bencas3

1          MR. LEVINE:  None from the defense, your Honor.

2          THE COURT:  All right.

3          I guess, Mr. Levine, it would be appropriate at this

4    point for you to speak on the various issues that have been

5    raised.

6          MR. LEVINE:  Judge, prior to our breaking, your Honor

7    asked Mr. Gonzalez about when and how he decided to tell the

8    truth to the government.  I submit to the Court that there is

9    nothing that he told your Honor that is any different than that

10   facing every single cooperating defendant.  He said he had a

11   fear of it becoming public that he was a cooperator, that he

12   had anxiety about relevant conduct or his sentence being

13   enhanced, he had anxiety about withholding this information.

14         But I submit to the Court that we have heard at trial

15   that he had ten or eleven or twelve proffer sessions and

16   meetings with the government.  He had an attorney who explained

17   the cooperation agreement to him.

18         Mr. Kim and the other AUSAs and the agents I am sure

19   explained to him that he is going to have to possibly one day

20   testify at trial; that he is going to have to tell the truth.

21   But he consistently, at every meeting, lied to the government,

22   and not just about Mr. Casimiro.  He lied to the government

23   about the gun.  He lied to the government about the

24   prostitution business that has nothing to do with this case.

25         So, why would he have to lie about all these different

1bencas3

1    things?  He didn't tell the truth until April of 2011, which is

2    roughly the time that your Honor set a trial date, when it

3    became extremely clear to him that, yes, he would have to

4    testify at trial.

5         That's why the messages started to go out, or at least

6    one message went out through the gentleman at Best Buy because

7    Mr. Gonzalez did not want to get on the witness stand and

8    possibly be confronted by me with evidence of him lying to the

9    government, because my client would have told us about things

10   that he did or didn't do with Mr. Gonzalez.  We would have

11   known at least about the four deals that are not in dispute.

12   He would have been questioned about some of those people and

13   some of those names and some of those locations.

14        So I submit to the Court, and I know this is sort of a

15   perverse argument, but had Mr. Casimiro not gone to trial, then

16   Mr. Gonzalez would have been allowed to perpetrate a fraud on

17   the government and on the sentencing judge, because it was only

18   because Mr. Casimiro decided to go to trial that he in April of

19   2011, after 14 or 15 months of consistently lying, came

20   forward.

21        Mr. Casimiro sat here through the trial and heard

22   everybody's testimony.  I reviewed it with him.  He knew we

23   were going to have a proffer session.  The path of least

24   resistance would have been to have gone to that proffer session

25   and adopted everything that was said at that trial.  Yes, it

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1bencas3

1   could have added to the relevant conduct.  I don't think that

2   he's really astute enough to understand what one deal would or

3   wouldn't add.

4        But he knew that there was going to come a time when

5   the government was going to evaluate him, and if he would have

6   adopted some of these deals or all of these deals, if he would

7   have adopted the $54,000, I think that in and of itself is the

8   most telling reason of why he's telling the truth.

9        I know the government will probably say, well, that

10  other money came from his uncle.  But if he had gone through

11  the safety valve and said I brought the $54,000, not the

12  $34,000, that would have cleared one of the three problems

13  between him and Mr. Gonzalez's testimony.  The amount of deals,

14  how much money there was, and whether there was an uncle.

15       He could have easily said I had $54,000 in my house,

16  but he didn't.  Why would he say he had $34,000?  He knows he's

17  already been convicted.  He knows $5,000, $10,000, $50,000, it

18  is all the same, he's still convicted of that two-kilo deal.

19       Why would he say 34,000?  Because that was the amount

20  of money he had, and that is the amount of money that Mr.

21  Gonzalez asked him to bring and that's what he brought.  He

22  said to your Honor, I think truthfully, I am not going to go in

23  there and lie.  Why would I admit to 54,000 if I brought

24  34,000.  And we know legally there would be absolutely no

25  difference between those amounts.

1bencas3

1    I think, Judge, that Mr. Gonzalez had every reason to
2    lie.  He lied to the government all the way through because he
3    didn't want them to know about his cocaine dealing.

4    He lied to the government when he claims that he had
5    this burden of guilt on him and he had to come forward and
6    confess, even though that had been beaten into him so many
7    times.  He came in front of a judge and pled guilty under a
8    cooperation that agreement that he received under false
9    pretenses.

10   Once the story came out, he had to continue with that
11   story.  Once he went up there and said, oh, my God, this case
12   is going to go to trial, he had to continue with that story.

13   Mr. Casimiro, on the other hand, he had his
14   opportunity to lie, and I submit to the Court, it wasn't today
15   it was at the proffer session.  He could have just gone to the
16   proffer session and told the government what they wanted to
17   hear, and he would basically be in the same position.  But we
18   would be in a much stronger argument for getting safety valve.
19   Whether or not Mr. Kim would oppose it at that point or not, I
20   don't know.  But he could have just adopted what was said and
21   he would be in a much better position.

22   So I don't want to go through the whole trial and
23   today's date, but it is for those reasons that I ask the Court
24   to find that Mr. Casimiro has proven his burden, that he has
25   been truthful, and that the government has wrongfully denied

1bencas3

1  safety valve to my client and that the government has wrongly

2  attributed to my client additional deals that he had no part

3  in.

4           THE COURT:  Mr. Kim?

5           MR. KIM:  Your Honor, I will just respond briefly.

6           First, addressing Mr. Gonzalez's motivations here, I

7  think it is quite clear that at the point at which Mr. Gonzalez

8  decided he was going to come clean and tell the government

9  about his prior crimes he had nothing to gain and everything to

10  lose by then lying about his prior deals.

11          I think Mr. Levine hit on it there, that perhaps a

12  part of Mr. Gonzalez's thinking was that if he testifies at

13  trial, Mr. Casimiro, with whom he had done prior deals, would

14  be sitting there and would give Mr. Levine opportunities to

15  cross-examine Mr. Gonzalez.

16          I think we agree on that.  So I think it defies any

17  kind of logic that Mr. Gonzalez would then think of additional

18  or make up additional deals that Mr. Casimiro supposedly was

19  engaged in with him if that isn't true.  He's creating massive

20  exposure for himself by lying about something.

21          I think Mr. Gonzalez made this point, too:  This

22  doesn't help Mr. Gonzalez.  It hurts him, because he's talking

23  about drug deals that he was a part of.

24          I think this conversation would be very different if

25  Mr. Gonzalez was talking about deals that he saw Mr. Casimiro

1bencas3

1  engaged in that he himself did not participate in, but that is
2  not the case.

3        Mr. Gonzalez is putting all the weight of those prior
4  cocaine deals on his own head.  He does not have incentive to
5  then lie and say Mr. Casimiro was a part of deals he wasn't a
6  part of.

7        THE COURT:  Isn't the point, if these things didn't
8  happen, you couldn't cross-examine him about them?  You would
9  know nothing.

10        So your point that he is afraid to get on the stand
11  really doesn't hold water.

12        MR. LEVINE:  Except, Judge, that they move in the same
13  circles.  And all these deals -- remember, it wasn't until
14  April 15 or thereabouts that he confessed about all these
15  different deals.  And so for him to not know whether we have an
16  investigator or there's people like the gentleman from Best
17  Buy, people from the neighborhood who know each other, and all
18  these deals are being talked about in front of him, how would
19  he not know if he didn't have Ajax or E Rock or some connection
20  to one of those people.  He had to come in here and start
21  talking about all these deals.

22        My position, Judge, is exactly what it was at trial.
23  Not that he fabricated these deals.  I fully believe that all
24  these deals happened.  But, as I said at trial, all he's doing
25  is saying and it was Mr. Casimiro's drugs, and it was Mr.

1bencas3

1    Casimiro's drugs.

2         As Mr. Kim said on the phone, and we have discussed it

3    here again, there is not absolutely one bit of evidence that

4    refutes Mr. Casimiro other than Mr. Gonzalez.  There isn't one

5    person --

6         THE COURT:  That is why I insisted that --

7         MR. LEVINE:  Right.

8         THE COURT:  -- they both testify today.

9         MR. LEVINE:  My position is these eleven deals did

10   happen, that six of them or seven of them were his deals

11   independently, perhaps with other people, and that he is

12   throwing Mr. Casimiro under the bus.

13        Why is he doing that?  Well, he's lied to the

14   government and violated every proffer and every cooperation

15   agreement.  I think at this point he's just doing whatever he

16   can pretrial to ingratiate himself.

17        MR. KIM:  I just think that argument falls apart,

18   Judge.  I don't think we need to address that any further.

19        I will say this.  I have already addressed Mr.

20   Gonzalez, and your Honor has now had the opportunity to observe

21   the demeanor of both witnesses.

22        Mr. Casimiro, and I think Mr. Levine asked why he

23   didn't just come in and adopt and own up to having provided the

24   entire amount of $60,000 for this deal.  I don't know the

25   answer to that question.

1bencas3

1    I mean, I can assume that maybe it makes it less

2    plausible for the same reasons that it is not plausible that he

3    had $36,000 in cash in his house from the sources that he said

4    he did.  It would make it even less plausible that he had

5    $60,000 in this his house.

6    I am just going to talk briefly -- I mean, I think Mr.

7    Casimiro's testimony on the stand today was wholly incredible.

8    I think it's quite clear that he engaged in drug deals with

9    other individuals.  That's where a large portion of this cash

10    came from.

11    It doesn't make any sense that he would have $36,000

12    in cash in his house for various expenses when, as your Honor

13    pointed out, he has house expenses, he has day-to-day living

14    expenses.  He is not making, relative to the amount of cash

15    that he has in his house, his salary is almost equal to that

16    entire amount, not to mention all the little inconsistencies

17    about what Mr. Casimiro claimed happened in the prior deals

18    versus what happened on April 28, 2009.

19    Mr. Casimiro's account about never having met any of

20    the other people involved in the drug deals, about Mr. Gonzalez

21    never having asked for a specific amount of money, all of these

22    things fall apart when it comes to his account of April 28.

23    I think the reason for that is clear.  It is because

24    Mr. Casimiro, having sat through the trial, is tailoring his

25    version of events to what he believes is corroborated by other

1bencas3

1   witnesses in this case.

2        So I think it is quite clear that Mr. Casimiro got up

3   on that witness stand and lied about his conduct on April 28,

4   2009, and about all the prior deals he engaged in with Giovani

5   Gonzalez.

6        I will say one other thing, your Honor.  I think the

7   government's position is that Mr. Casimiro committed perjury on

8   the witness stand.  As a result I think his guidelines range

9   should reflect that conduct.

10       Right now I think, as calculated in the presentence

11  report, his total offense level is 32.  I think this is a

12  textbook case for why he should be accorded obstruction of

13  justice points as well under 3C1.1, which would then bring his

14  offense level to 34 and his guidelines range to 151 to 188

15  months.

16       So that is the government's view of what his resulting

17  guidelines range is based on his conduct at this hearing.  And

18  I understand your Honor is just having us address the Fatico

19  issue.  I have more to say as the to appropriate sentence.

20            THE COURT:   OK.

21            MR. LEVINE:   Judge, I am going to come back to my same

22  argument.  I find it incredible that the government, without a

23  bit of evidence that he lied, would take the word of Mr.

24  Gonzalez and assume that that is the gospel from Mount Sinai.

25       He lied to their faces at every single proffer

164

1bencas3

1   session.  He lied in court in front of a judge.  He violated

2   all the terms of his cooperation agreement.  But once he came

3   in with his miraculous confession in April, right before trial,

4   then everything he said is fine, everything is forgiven, and we

5   believe everything sea says.

6          So to ask for perjury, obstruction points based on Mr.

7   Gonzalez's testimony without a single eyewitness, without a

8   single fact, phone call, photograph, anything that connects my

9   client to any of those matters, I think is patently unfair.

10         THE COURT:  Well, I think you are leaving out

11  something.  The jury believed him, and the jury knew about all

12  of the lies to the government.  The jury clearly believed his

13  testimony, and that's why the verdict came back so quickly.

14         MR. LEVINE:  I don't mean to interrupt.

15         THE COURT:  Yes.

16         MR. LEVINE:  I said this at the outset of the hearing,

17  your Honor.  I respectfully disagree with your Honor.  I

18  understand that the verdict came back quickly.  They could have

19  convicted him on the countersurveillance at the mall.  They

20  could have convicted him on coming to the house with a bag full

21  of money.  They could have convicted him on Nunez's testimony.

22  They could have believed Mr. Gonzalez on the generality that

23  there was a drug deal for two kilos.  They could have believed

24  that they fabricated a story that they were going to the mall

25  to meet girls.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A 53

1bencas3

1      But to say that they believed Mr. Gonzalez on 11 or 10
2   drug deals that occurred five years ago, or they believed Mr.
3   Gonzalez on an uncle --

4      THE COURT:  Of course they didn't have to believe him
5   on everything.  But the point is that the bottom line was they
6   found him a credible witness.

7      Had they not found him a credible witness, there is no
8   way that it's logical to conclude that the verdict could have
9   been returned as quickly as it was after the entirety of your
10  summation was attacking Mr. Gonzalez.  I think that is a fair
11  way to read the jury's verdict.  They were not simply
12  dismissing Mr. Gonzalez.

13     You had also raised the issue of whether the defendant
14  should get points off for acceptance of responsibility.

15     MR. LEVINE:  Yes, your Honor.

16     THE COURT:  First of all, I don't think objectively
17  that this is a case on which you can go to trial and still get
18  points off for acceptance of responsibility.  There was a
19  direct attack on the government's evidence here.

20     So let me say that, regardless of anything else
21  related to this Fatico hearing, I would not award acceptance
22  points in this case.

23     Mr. Kim indicated that he had other things to say
24  specifically about sentencing.  I don't know if you had more
25  that you wanted to say.

1bencas3

1         MR. LEVINE:  Judge, I am going to rely on the

2    memorandum in aid of sentencing, all the family background that

3    we submitted to the court under 3553 factors, the letters

4    submitted, and our legal arguments.  I think that everything

5    has been pretty well covered already.

6         THE COURT:  OK.

7         Mr. Casimiro, is there anything else that you want to

8    say at this point?

9         THE DEFENDANT:  I apologize for taking the case to

10   trial.  I apologize to my family.  I feel like I let them down,

11   my family, my fiance and my friends.  It was just a big

12   mistake, and I will never do it again.

13        THE COURT:  OK.

14        Mr. Kim?

15        MR. KIM:  Your Honor, I will just say briefly I think

16   we all understand the offense conduct here is serious, just as

17   many narcotics offenses are.  This is not about the defendant

18   having exercised his right to trial.  That is absolutely his

19   right.  I think what differentiates this case from any other

20   similarly situated defendants in a narcotics context is that

21   this defendant came in for a safety valve proffer and lied to

22   prosecutors and agents and then came and took an oath to swear

23   the truth in this courtroom and lied again before your Honor.

24        I think that speaks to an utter lack of genuine

25   remorse for his conduct, and I think a sentence should take

1bencas3

1    that into account.

2          As your Honor is taking into account the history and

3    characteristics of the defendant and his conduct in this case

4    and the need for deterrence, I think those are all serious

5    things that the Court should take into account in fashioning a

6    reasonable sentence, which is why the government's position is

7    that a significant sentence is warranted in this case.  I am

8    happy to answer any questions the Court has.

9          THE COURT:  All right.

10          I think that we need to start at the beginning of

11    whether Mr. Casimiro is entitled to the benefit of the safety

12    valve.  As you know, I made it -- well, the answer is no.  I do

13    not find that he testified truthfully about his conduct with

14    respect to the crime charged or other prior criminal conduct

15    with Mr. Gonzalez and perhaps otherwise.

16          The bottom line here is that unfortunately Mr.

17    Casimiro had every reason to lie and he did so.  His story on

18    the witness stand simply didn't hang together.  It was

19    internally inconsistent.

20          It was, as Mr. Kim pointed out, even less plausible if

21    he had brought the entirety of the money to the deal or if he

22    admitted to having brought the entirety of the money to the

23    deal.

24          There simply was no good reason, no honest reason to

25    keep $36,000 in cash in your house and no good honest reason to

1bencas3

1   withdraw the settlement proceeds from the bank and keep them as

2   cash.  And the effort to claim that he won additional money

3   gambling is lame.

4        In contrast, Mr. Gonzalez didn't have a reason to lie

5   at the trial, and he didn't have a reason to lie today.  In

6   fact, there were many reasons for him to have told the truth.

7   There was no reason, because Mr. Gonzalez was not testifying

8   under some grant of immunity, to make up criminal conduct with

9   this defendant that hadn't existed.  There is no reason for Mr.

10  Gonzalez to have made up an uncle that didn't exist.

11       In total, his story, his testimony is much more

12  coherent.  As I mentioned earlier, it is clear to me that the

13  jury believed his testimony in fundamental respects, and that

14  explains in part the swift verdict that they reached, which I

15  noted earlier there was no more than an hour from the time that

16  they were sent to retire and the time they physically were back

17  in the courtroom and had reached a verdict even earlier than

18  the one hour.

19       Based on what I find to be credible testimony by Mr.

20  Gonzalez, I find that the calculations in the presentence

21  report of the guidelines range of being 121 to 151 months are

22  accurate.

23       I think that it's unfortunate, Mr. Casimiro, that you

24  decided to go to trial, not because there is anything wrong

25  with going to trial -- and I certainly want this to be clear.

169

1bencas3

1   I am not going to punish you because you went to trial.  But as

2   I tried to discuss with you when you were on the stand, you

3   could have pled guilty and sought the safety valve.  Had you

4   done that, you would not be in the pickle that you find

5   yourself in today.

6        Similarly, you did not have to pursue this hearing.  I

7   tried to tell you at the outset that there would be a

8   consequence, a negative consequence to it if I found that you

9   weren't telling the truth, as I have.

10       It doesn't give me any pleasure to sentence you to

11  more time than I would have.  But you are a grownup, and these

12  are decisions that you have made.  And, like your prior drug

13  dealing, these are decisions that you will have to live with.

14       I think that it is especially unfortunate that you

15  made these choices, because I truly believe that you have the

16  capacity to lead a law-abiding life.  I think you're smart

17  enough.  You've held down a job.

18       But it is actually fairly troubling, on the other

19  hand, that you engaged in narcotics dealing, given that your

20  father was an addict and you knew the harm that drugs do.  You

21  saw in your own home the consequences of narcotics addiction.

22  I really don't understand how you could have written to me that

23  you considered attempting to buy or sell cocaine at some time

24  to be justified civil disobedience and how you ever could have

25  thought that even if all you had done was contributed money for

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1bencas3

1    a cocaine deal that it was a victimless crime.  You have lived

2    with the consequences of addiction.  So it's, as I say, very

3    puzzling to me that you ever could have gone down this path.

4          Had you not decided to testify before me in the

5    fashion that you did today and also let me know something that

6    I never knew, and that is that you had $36,000 in cash in your

7    house, which is not a flattering fact, I would have given you

8    the mandatory minimum, because, as I said, I think you could

9    have led a law-abiding life, and I would have hoped that this

10   experience would have been sufficient to make it clear to you

11   that that's the only life that really does make any sense.

12         But unfortunately you took the stand.  You didn't tell

13   me the truth.  So, as I told you there would be, there is a

14   consequence for that.  I don't want that consequence to be huge

15   because this case could have gone on a different path.  So the

16   consequence is an additional year in jail, six years.

17         You are placed on supervised release for five years.

18   There is a $100 special assessment.

19         Is the government pursuing forfeiture here?

20         MR. KIM:  No, your Honor.

21         THE COURT:  OK.

22         All of the mandatory, standard and special conditions

23   of supervised release are imposed that are set out at pages 17

24   and 18.

25         I want to advise you that you have the right to appeal

1bencas3

1    your conviction and sentence.  You have ten days to do so.

2            MR. LEVINE:  Your Honor, can I ask that the Court

3    recommend to the Bureau of Prisons that the defendant

4    incarcerated in a prison in the tristate area near his family.

5            THE COURT:  Sure.

6            MR. LEVINE:  As well my understanding under RDAP is

7    that the defendant would be eligible for the residential drug

8    treatment program.  I would ask that the Court recommend to the

9    Bureau of Prisons to review if the defendant would be eligible

10   at some point for that program.

11           THE COURT:  Sure.

12           Is there anything else?

13           MR. KIM:  Your Honor, there was a superseding

14   indictment in this case.  I don't know that the defendant was

15   named in the underlying indictment, but to the extent there are

16   any open charges against the defendant, the government moves to

17   dismiss them.

18           THE COURT:  OK.  The motion is granted.  Is there

19   anything else?

20           MR. LEVINE:  No, your Honor.

21           THE COURT:  OK.

22           (Adjourned)

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

A 60

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Rafael Casimiro | Case Number:  S1 09 Cr. 497-04 (NRB) |
| | USM Number: 62907-054 |
| | David E. Levine |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)    1
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 281 U.S.C. 841(b)(1)(B) | Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Cocaine | 4/28/2009 | 1 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/16/11

11/14/2011
Date of Imposition of Judgment

_Naomi Reice Buchwald_
Signature of Judge

Naomi Reice Buchwald                    U.S.D.J.
Name of Judge                           Title of Judge

November 16, 2011
Date

AO 245B    (Rev. 09/08) Judgment in Criminal Case
          Sheet 2 — Imprisonment

Judgment — Page    2    of    6

DEFENDANT:  Rafael Casimiro
CASE NUMBER:  S1 09 Cr. 497-04 (NRB)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Six years.

☐  The court makes the following recommendations to the Bureau of Prisons:

Defendant should be imprisoned in the tri-state area.
Defendant should be permitted to participate in the RDAP if he qualifies.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

☐  at _____  ☐ a.m.  ☐ p.m.  on _____ .

☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  before 2 p.m. on _____ .

☐  as notified by the United States Marshal.

☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
　　　　　Sheet 3 — Supervised Release

DEFENDANT:  Rafael Casimiro                                                    Judgment—Page ___3___ of ___6___
CASE NUMBER:  S1 09 Cr. 497-04 (NRB)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Five years.

　　　　The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  *(Check, if applicable.)*

☑   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  *(Check, if applicable.)*

☑   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  *(Check, if applicable.)*

☐   The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense.  *(Check, if applicable.)*

☐   The defendant shall participate in an approved program for domestic violence.  *(Check, if applicable.)*

　　　　If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

　　　　The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 3C — Supervised Release

DEFENDANT:  Rafael Casimiro
CASE NUMBER:  S1 09 Cr. 497-04 (NRB)

Judgment—Page    4    of    6

## SPECIAL CONDITIONS OF SUPERVISION

The mandatory drug testing condition is suspended due to imposition of the following special condition requiring drug treatment and testing: The defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol.  The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer.  The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to a search may be grounds for revocation.  The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

The defendant is to be supervised by the district of residence.

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page ___5___ of ___6___ |
|---|---|

DEFENDANT: Rafael Casimiro
CASE NUMBER: S1 09 Cr. 497-04 (NRB)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ |

☐  The determination of restitution is deferred until _____ .  An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐  the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A 65

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___6___ of ___6___

DEFENDANT:  Rafael Casimiro
CASE NUMBER:  S1 09 Cr. 497-04 (NRB)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ _____100.00_____  due immediately, balance due

       ☐  not later than _____ , or
       ☐  in accordance  ☐ C,  ☐ D,  ☐  E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Criminal Notice of Appeal - Form A

# NOTICE OF APPEAL

### United States District Court

Southern _____ District of New York

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: ____ _____        │
│ DATE FILED: _____       │
└─────────────────────────────────┘
```

Caption:

United States of America v.

Rafael Casimiro

Docket No.: 09-Cr-497

Naomi Reice Buchwald

(District Court Judge)

Notice is hereby given that Rafael Casimiro _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment ✓ , other ⌐ _____

entered in this action on November 16, 2011 .                    (specify)

(date)

This appeal concerns: Conviction only |___ Sentence only |___| Conviction & Sentence |✓ Other |___

Defendant found guilty by plea |   | trial |✓ | N/A |   .

Offense occurred after November 1, 1987? Yes |✓ | No |    N/A |

Date of sentence: November 14, 2011    N/A |___|

Bail/Jail Disposition: Committed |✓ Not committed |    | N/A |

Appellant is represented by counsel? Yes ✓ | No |    | If yes, provide the following information:

| | |
|---|---|
| Defendant's Counsel: | David E. Levine Esq. |
| Counsel's Address: | 186 Joralemon Street, 9th Floor |
| | Brooklyn, New York 11201 |
| Counsel's Phone: | 718-875-1212 |
| Assistant U.S. Attorney: | Edward Y. Kim |
| AUSA's Address: | One Saint Andrew's Plaza |
| | New York, New York 10007 |
| AUSA's Phone: | 212-637-2401 |

Signature